J-A23033-19

2020 PA Super 29

| | | |
|---|---|---|
| DEBRA KOHLMAN, ADMINISTRATRIX OF THE ESTATE OF FAY A. VINCENT, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GRANE HEALTHCARE COMPANY; HIGHLAND PARK CARE CENTER, LLC, D/B/A HIGHLAND PARK CARE CENTER; GRANE ASSOCIATES, LP; GRANE ASSOCIATES, INC.; GRANE PROPERTIES, INC.; TREBRO, INC.; HIGHLAND PARK PROPERTIES, LLC; UNIVERSITY OF PITTSBURGH MEDICAL CENTER A/K/A UPMC; UPMC PRESBYTERIAN SHADYSIDE; UPMC SHADYSIDE HOSPITAL | : | |
| | : | |
| APPEAL OF: GRANE HEALTHCARE COMPANY; HIGHLAND PARK CARE CENTER, LLC, D/B/A HIGHLAND PARK CARE CENTER; GRANE ASSOCIATES, LP; GRANE ASSOCIATES, INC.; GRANE PROPERTIES, INC.; TREBRO, INC.; HIGHLAND PARK PROPERTIES, LLC | : | No. 144 WDA 2019 |

Appeal from the Order Entered January 2, 2019
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 18-010949

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

OPINION BY MUSMANNO, J.: FILED FEBRUARY 10, 2020

Grane Healthcare Company, Highland Park Care Center, LLC d/b/a

Highland Park Care Center, Grane Associates, LP, Grane Associates, Inc.,

Grane Properties, Inc., Trebro Inc., and Highland Park Properties, LLC

(collectively, "Defendants"), appeal from the Order denying their Preliminary Objections seeking to compel arbitration of the claims asserted against Defendants by Debra Kohlman ("Plaintiff"), Administratrix of the Estate of Fay A. Vincent ("decedent"). We affirm in part, reverse in part, and remand for further proceedings.

On January 31, 2017, decedent, who was 67 years old and Plaintiff's mother, was discharged from a Pittsburgh hospital (the "Hospital")[1] and admitted for care and rehabilitation at Highland Park Care Center ("Highland Park"),[2] a skilled nursing home facility located in Pittsburgh. While she was being admitted, decedent executed a two-page document entitled "AGREEMENT TO ARBITRATE DISPUTES" (hereinafter, the "Arbitration Agreement").[3]

The Arbitration Agreement provides, in relevant part, as follows:

> PLEASE READ CAREFULLY, YOU ARE GIVING UP YOUR
> RIGHT TO SUE [HIGHLAND PARK] IN COURT
>
> [Decedent] and [Highland Park] agree that all matters in dispute between [decedent] and [Highland Park], its agents,

_____

[1] Decedent was treated for various conditions at the Hospital, including congestive heart failure, diabetes, and pressure ulcers. Decedent remained in the Hospital for three months, two of which were in the intensive care unit.

[2] Defendants collectively owned and operated Highland Park.

[3] The record does not contain the admission agreement concerning decedent's admission into Highland Park. Notably, nor does it explain the circumstances surrounding decedent's execution of the Arbitration Agreement and admission agreement. However, it does indicate that the Arbitration Agreement is a separate contract from the admission agreement.

servants, employees, officers, contractors and affiliates (hereinafter "the parties"), including but not limited to claims for personal injuries or any controversy or claim between the parties arising out of or relating to the agreement for admission and for the provision of nursing facility services, whether by virtue of contract, tort or otherwise, including the scope of this [A]rbitration [A]greement and the arbitrability of any claim or dispute[,] shall be resolved exclusively by binding arbitration. ...

* * *

The parties agree that any administrative fees and costs, including the fees of the arbitrator, shall be split equally between the parties, and that each party shall be responsible for their own attorneys' fees.[4]

In the event that a court having jurisdiction finds any portion of this agreement unenforceable, then that portion shall not be effective and the remainder of the agreement shall remain effective.

* * *

[Decedent] retains all rights under federal and state law to file grievances with or to complain to authorities or advocacy groups concerning care and treatment.

* * *

[Decedent] understands that he/she has the right to consult legal counsel concerning this [A]rbitration [A]greement; that execution of this [A]rbitration [A]greement is not a condition of admission or to the furnishing of services to [decedent] by [Highland Park]; and that this [A]rbitration [A]greement may be rescinded by written notice delivered to [Highland Park] within ten (10) days of signature. ...

The undersigned certifies that he/she has read this [A]rbitration [A]greement and that it has been fully explained to him/her, that he/she understands its contents, and that he/she is the Resident or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

_____

[4] We will hereinafter refer to this provision as the "fee-splitting provision."

Arbitration Agreement, 1/31/17 (footnote added; bold, underline and heading capitalization in original). A representative of Highland Park also signed and dated the Arbitration Agreement. Decedent died approximately three months after her admission into Highland Park.

On August 27, 2018, Plaintiff filed a Complaint against, inter alia, Defendants,[5] alleging negligence, survival and wrongful death causes of action. Plaintiff alleged that Defendants were negligent in their care and treatment of decedent while she was a resident at Highland Park, which caused her injuries and eventually led to her death. Plaintiff sought compensatory and punitive damages.

On October 22, 2018, and November 13, 2018, Defendants filed Preliminary Objections to the Complaint.[6] Therein, Defendants asserted, in relevant part, that Plaintiff's claims must be resolved via arbitration, pursuant to the Arbitration Agreement. Plaintiff thereafter filed a Response to the Preliminary Objections, asserting, inter alia, that the Arbitration Agreement was unenforceable, void, unconscionable, against public policy, and the

_____

[5] The Complaint also named as defendants University of Pittsburgh Medical Center, a/k/a UPMC, UPMC Presbyterian Shadyside, and UPMC Shadyside Hospital (collectively, "the UPMC defendants"). The UPMC defendants are not parties to the instant appeal, and did not file a brief.

[6] Defendants did not attach a Notice to Plead to their Preliminary Objections, as required by Allegheny County Local Rule 1028(c)(2) (providing that if an issue of fact is raised in preliminary objections, they "must be endorsed with notice to plead[.]").

- 4 -

product of duress. The trial court heard oral argument on the matter on January 2, 2019, wherein the parties' respective counsel disputed the enforceability of the Arbitration Agreement. Importantly to this appeal, the parties did not engage in any discovery prior to the trial court's ruling on the Preliminary Objections.

By an Order dated January 2, 2019, and entered on January 8, 2019, the trial court denied Defendants' Preliminary Objection to compel arbitration. Defendants timely filed a Notice of Appeal. The trial court ordered Defendants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Defendants timely complied. The trial court then issued a Rule 1925(a) Opinion.

In its Opinion, the trial court ruled, in relevant part, as follows:

⨍ Plaintiff is entitled to a trial on the wrongful death cause of action, notwithstanding the Arbitration Agreement.[7] See Trial Court Opinion, 3/13/19, at 4.

⨍ "[T]he standards for a valid and enforceable agreement to arbitrate cannot be met where an ill or damaged patient signs such an agreement as either an implicit or explicit condition of admission to a health care facility, such as [Highland Park] here." Id.

⨍ The "[fee-splitting] provision in the [Arbitration] Agreement[, which states] that an injured patient has also agreed to pay for the Arbitrator's services and to have given up his or her right to a trial in a court before a judge and jury, where there is no

_____

[7] As we discuss below, Defendants do not dispute that Plaintiff's wrongful death action must proceed to court; thus, their claim under the Arbitration Agreement concerns only the survival action.

- 5 -

charge to litigants for those services, defines overreach and chutzpah." Id.

⟩ Defendants failed to meet "their burden to show that [d]ecedent knew what she was giving up and what expense she was accepting when she signed" the Arbitration Agreement. Id. at 4-5.

⟩ Defendants' attempt to enforce the Arbitration Agreement "with an allegedly elderly woman in frail health and in need of advanced wound care, is facially unconscionable and procured under duress[,]" and the Arbitration Agreement is thus void, and Plaintiff's survival action must proceed to court. Id. at 4.

On appeal, Defendants present the following issue for our review: "Whether the court below erred by overruling Preliminary Objections seeking to compel the matter to arbitration pursuant to a binding agreement to arbitrate disputes?" Brief for Defendants at 3.

This Court previously set forth our standard of review and the relevant law as follows:

Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.

* * *

[C]ourts must bear in mind:

(1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved

- 6 -

is not susceptible to an interpretation that covers the asserted dispute.

\* \* \*

Pennsylvania law endorses the nationally accepted liberal policy favoring arbitration embodied in the Federal Arbitration Act at 9 U.S.C. §§ 1-16 ("FAA"):

The enactment of the FAA expresses a liberal federal policy favoring arbitration agreements. Congress['s] purpose was to overcome state legislative and judicial efforts to undermine the enforceability of arbitration agreements, inter alia, by establishing a substantive rule of federal law placing such agreements upon the same footing as other contracts. The federal statute thus requires that a written provision to settle by arbitration a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable, and enforceable, save upon any grounds at law or in equity for the revocation of any contract.

Griest v. Griest, 183 A.3d 1015, 1022 (Pa. Super. 2018) (citations, brackets, ellipses, footnote and indents omitted).

We are further guided by the reasoning of our Pennsylvania Supreme Court in Taylor v. Extendicare Health Facilities, Inc., 147 A.3d 490 (Pa. 2016):

[W]hile state courts have attempted to reconcile their state law contract defenses and public policy protections with the preemptive effect of the FAA, see, e.g., [AT&T Mobility, LLC v.] Concepcion[,] 563 U.S. [333,] 342 [(2011)] (recognizing that "the judicial hostility toward[] arbitration that prompted the FAA had manifested itself in "a great variety" of "devices and formulas" declaring arbitration against public policy"), the United States Supreme Court has endeavored to compel judicial acceptance of private agreements to arbitrate. The FAA is now perceived as applying to almost every arbitration agreement, although the savings clause envisions a limited role for state law. In this respect, arbitration has come a long way from its origin as a mutually agreed-upon method of dispute resolution by two business entities of equal bargaining power, and now is employed

in a variety of contracts, many of which are contracts of adhesion. As arbitration clauses proliferate, individuals will ever more broadly exchange their right to a jury trial for basic consumer products or nursing home care.

One of the striking consequences of the shift away from the civil justice system and toward private adjudication is that corporations are routinely stripping individuals of their constitutional right to a jury trial. See U.S. Const. amend. VII (preserving the right to a trial by jury); Pa. Const. art. 1, § 6 (same). While one's right to a jury trial may be waived, it is not at all apparent that signatories to arbitration agreements are aware that they waive their right to a jury trial upon the execution of an arbitration agreement.

The West Virginia Supreme Court of Appeals highlighted this constitutional concern in Brown et al[.] v. Marmet Health Care Ctr. et al[.], 228 W. Va. 646, 724 S.E.2d 250 (W.Va. 2011). Relying in part upon the state constitution's provision of the right to a jury trial, W. Va. Const. art. III, § 13, the West Virginia court criticized the [United States] Supreme Court's decisions granting the FAA sweeping preemptive effect. Brown, 724 S.E.2d at 278 ("With tendentious reasoning, the United States Supreme Court has stretched the application of the FAA from being a procedural statutory scheme effective only in the federal courts, to being a substantive law that preempts state law in both the federal and state courts."). Based upon its belief that Congress did not intend for all arbitration agreements to be governed by the FAA, the state court held that the FAA did not apply to pre-dispute agreements to arbitrate negligence claims in nursing home contracts. Id. at 291-92 ([stating that] "[a]s a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in personal injury or death, shall not be enforced to compel arbitration of a dispute concerning the negligence.").

On appeal, the [United States] Supreme Court was unsympathetic to the [West Virginia] court's concern for the right to a jury trial. In a cursory per curiam opinion, the Supreme Court reversed, and chastised the West Virginia court for "misreading and disregarding the precedents of this Court interpreting the FAA." Marmet [Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 531 (2012) (per curiam)]. The Court held that the state's public

- 8 -

policy rationale constituted "a categorical rule prohibiting arbitration of a particular type of claim," which the Court held was "contrary to the terms and coverage of the FAA" and, therefore, preempted. Id. at [533]; see [also] Nitro-Lift Techs., L.L.C. v. Howard, 568 U.S. 17 ... (2012) (per curiam) (invalidating a state law that required the validity of non-compete provisions in employment contracts to be resolved judicially).[FN]

> [FN] Interestingly, upon remand from the Supreme Court, the West Virginia Supreme Court of Appeals again declared that the arbitration agreements at issue could be invalid, this time based upon common-law grounds of unconscionability, and remanded for the development of a record to assess these common-law arguments. Brown et al v. Marmet Health Care Ctr. et al, 229 W. Va. 382, 729 S.E.2d 217, 223 (W.Va. 2012) [(hereinafter, Brown II)].

With this Supreme Court jurisprudence in mind, and solicitous of our obligation to consider questions of arbitrability with a "healthy regard for the federal policy favoring arbitration," Moses H. Cone [Mem'l Hosp. v. Mercury Constr. Corp.], 460 U.S. [1,] 2[4] [(1983)], we observe that Section 2 of the FAA binds state courts to compel arbitration of claims subject to an arbitration agreement. 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable"). This directive is mandatory, requiring parties to proceed to arbitration on issues subject to a valid arbitration agreement, even if a state law would otherwise exclude it from arbitration. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52 ... (1995).

The only exception to a state's obligation to enforce an arbitration agreement is provided by the savings clause, which permits the application of generally applicable state contract law defenses such as fraud, duress, or unconscionability,[8] to

---

8 Concerning the defense of unconscionability, we have explained that "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties[,] together with contract terms which are unreasonably favorable to the other party." Cardinal v. Kindred Healthcare, Inc., 155 A.3d 46, 53 (Pa. Super. 2017) (citation omitted).

determine whether a valid contract exists. [Doctor's Assocs. v.] Casarotto, 517 U.S. [681,] 687 [(1996)]; Volt [Info. Scis. v. Bd. Of Trs.], 489 U.S. [468,] 476 [(1989)]; Perry [v. Thomas], 482 U.S. [483,] 492 n.9 [(1987)].

Taylor, 147 A.3d at 507-09 (Pa. 2016) (footnote added, some footnotes and brackets omitted).[9] Additionally, this Court has explained that "the existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 661 (Pa. Super. 2013) (citation omitted).

Initially, Defendants do not dispute that Plaintiff is entitled to a trial on the wrongful death cause of action, notwithstanding the Arbitration Agreement. See Brief for Defendants at 32 (citing Pisano, 77 A.3d at 663 (stating that "Pennsylvania's wrongful death statute creates an independent action distinct from a survival claim that, although derived from the same tortious conduct, is not derivative of the rights of the decedent. We conclude, therefore, that the trial court did not abuse its discretion in determining that

_____

[9] Though the Taylor Court held that the FAA binds state courts to compel arbitration of claims subject to an arbitration agreement, even if a state law would exclude it from arbitration, Taylor, 147 A.3d at 509, the court went on to remand the case to the trial court to afford the parties "the opportunity to litigate whether there is a valid and enforceable arbitration contract in accord with generally applicable contract defenses and the FAA's savings clause." Id. at 513.

Decedent's contractual agreement with [the nursing home] to arbitrate all claims was not binding on the non-signatory wrongful death claimants.")).

We next turn to Defendants' claim that the trial court erred in denying their Preliminary Objection to compel arbitration of the survival action, and ruling that the Arbitration Agreement was unconscionable and, thus, void. See Brief for Defendants at 15-27.

Because the record has not been sufficiently developed to address Plaintiff's contract law unconscionability defense, it would be premature at this point to reach the merits of Defendants' claim. In this regard, we are persuaded by the following argument advanced by Plaintiff:

> Plaintiff was not afforded an opportunity to conduct discovery on the issue of whether a valid and enforceable contract to arbitrate exists. Instead, Plaintiff set forth grounds upon which the proffered [A]rbitration [A]greement could be set aside as a matter of law. But[,] "where material facts are disputed ... concerning the general commercial background underlying a challenged transaction ...[,] fact finding may be necessary." Salley v. Option One Mortg. Corp., 925 A.2d 115, 120 (Pa. 2007).[10] In light of allegations that a contract is unconscionable, "the parties are to be afforded an opportunity to present evidence as to commercial setting, purpose and effect to aid the court in its determination." Id.
>
> Further, a preliminary objection in the nature of a motion to compel arbitration "cannot be determined from facts of record." Pa.R.Civ.P. 1028(a)(6)[, (c)(2), note]. And "[i]f an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.Civ.P. 1028(c)(2).

_____

[10] The Salley Court further stated that although the question of unconscionability is "ultimately a question of law for the court to decide[,]" the matter is also "often fact-sensitive[.]" Salley, 925 A.2d at 124.

Brief for Plaintiff at 20-21 (footnote added; footnote in original omitted). Indeed, in Taylor, supra, this Court declined to address the plaintiff's generally applicable contract defenses, including unconscionability, where plaintiffs did not have the opportunity to present these issues in the lower courts, and directed that "[u]pon remand to the trial court, the parties will have the opportunity to litigate whether there is a valid and enforceable arbitration contract in accord with generally applicable contract defenses and the FAA's savings clause." Taylor, 147 A.3d at 512-13; see also id., supra (pointing out that the West Virginia state court, in Brown II, remanded for the development of a record to assess the plaintiff's claim of unconscionability of the nursing home arbitration agreement, where the parties did not have the opportunity to conduct discovery and develop the record on this matter).

Here, the record was not developed to establish facts surrounding, inter alia, the following:

- decedent's physical and mental state at the time that she executed the Arbitration Agreement;[11]

- whether decedent was accompanied by anyone at this time;

- the nature of the admission agreement that decedent executed (and whether the Arbitration Agreement was part of, or buried within, a potentially lengthy admissions packet that decedent was required to complete, while in ill health);

_____

[11] We are naturally cognizant that decedent's death will limit the amount of facts that can be uncovered surrounding some of the circumstances of decedent's execution of the Arbitration Agreement; nevertheless, the parties are entitled to develop the record on the unconscionability claim. See Taylor, 147 A.3d at 512-13.

J-A23033-19

*)* whether the Hospital sent the ill decedent directly to Highland Park upon her discharge from the Hospital;

*)* whether decedent was aware that she could receive treatment from other skilled nursing care facilities, and whether she had the ability to research other options;

*)* whether decedent was economically constrained to enter into an agreement with Highland Park to provide her care (and relatedly, whether she had the means to pay for arbitration).

Accordingly, we remand for the parties to conduct discovery, and develop the record on the defense of unconscionability related to the survival action, and for a proper consideration by the trial court as to whether the Arbitration Agreement is unconscionable, based on a complete record. See Taylor, 147 A.3d at 512-13. Thus, we affirm the trial court's Order refusing to compel arbitration of the wrongful death action, and vacate that part of the Order denying Defendants' Preliminary Objection seeking to compel arbitration of the survival action, and remand consistent with the foregoing.

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2020

- 13 -