J-A12002-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| MARIE K. GLOMB, AS ADMINISTRATRIX C.T.A. OF THE ESTATE OF EVELYN C. SOFRANKO AKA EVA C. SOFRANKO, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1724 WDA 2018 |
| ST. BARNABAS NURSING HOME, INC. D/B/A ST. BARNABAS NURSING HOME | : : : : | |

Appeal from the Judgment Entered December 4, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 14-11106

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED SEPTEMBER 10, 2020

Appellant, Marie Glomb (Plaintiff), as Administratrix C.T.A. of the Estate of Evelyn C. Sofranko (Ms. Sofranko), appeals from the judgment entered by the Court of Common Pleas of Allegheny County (trial court) against Plaintiff and in favor of St. Barnabas Nursing Home, Inc. d/b/a St. Barnabas Nursing Home (Nursing Home) following arbitration.  We affirm.

Ms. Sofranko was a resident at the Nursing Home from December 21, 2011 until November 5, 2013.  Complaint ¶1; Answer ¶1.  Upon admission to the Nursing Home, Ms. Sofranko's son, Thomas Sofranko, as Power of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Attorney, signed an arbitration agreement (the Arbitration Agreement) on her behalf. Arbitration Agreement, 12/21/11. Ms. Sofranko died on November 16, 2013. Complaint ¶69; Counterclaim ¶6.

On March 19, 2015, Plaintiff filed a Survival and Wrongful Death action against the Nursing Home and other defendants alleging that Ms. Sofranko sustained numerous injuries while a resident at the Nursing Home, the Nursing Home was negligent in the care it rendered to Ms. Sofranko, and that the Nursing Home's negligence caused her death.[1] Complaint ¶ 86-92. On May 7, 2015, preliminary objections to Plaintiff's complaint were filed, seeking, in part, to enforce the Arbitration Agreement. Preliminary Objections, ¶¶14-16. On July 21, 2015, the Nursing Home filed an Answer, raising as New Matter that the claims should be adjudicated in arbitration based on the Arbitration Agreement. Answer, 7/21/15. On November 21, 2016, a "Motion to Compel Arbitration of Survival Act Claim and Stay of Remaining Claims" was filed on behalf of the Nursing Home. Motion to Compel, 11/21/16. The parties engaged in brief discovery and filed briefs to the trial court regarding the motion. On May 2, 2017, the trial court held a hearing for arguments on the motion.

_____

[1] Plaintiff also named St. Barnabas Health System, Inc., St. Barnabas Clinical Services, Inc., and St. Barnabas Communities Inc. as defendants in her complaint. However, St. Barnabus Health Systems, Inc. and St. Barnabas Communities Inc. were dismissed from the action by stipulation of the parties. See Stipulation, 7/10/15. St. Barnabas Clinical Services, Inc., the other remaining defendant, is not a party to this appeal.

On May 24, 2017, the trial court issued an Order, which granted in part, the motion to compel arbitration, and ordered that Plaintiff's Survival Act claims against the Nursing Home be submitted to arbitration. Trial Court Order, 5/24/17.[2] The Survival claims between Plaintiff and the Nursing Home proceeded to an arbitration trial and, thereafter, the arbitrator found in favor of the Nursing Home. On November 30, 2018, Plaintiff filed a motion to confirm the arbitration award. That same day, the trial court entered an order granting the motion. Trial Court Order, 11/30/18. On December 4, 2018, judgment was entered for the Nursing Home and against Plaintiff. On December 6, 2018, Plaintiff filed a notice of appeal.

Plaintiff raises the following issues on appeal:

1. Should [Plaintiff's] claims be resolved in a court of law?

2. Is [the Nursing Home's] Arbitration Agreement an unconscionable contract of adhesion and thus enforceable?

3. Did [the Nursing Home] breach its duty of good faith and fair dealing, thereby rendering the Arbitration Agreement void and unenforceable?

Plaintiff's Brief at 3 (answers omitted).[3] Our review is de novo and plenary. Mitch v. XTO Energy, Inc., 212 A.3d 1135, 1138 (Pa. Super. 2019)

---

[2] The order denied the motion as to the Survival claim against St. Barnabas Clinical Services and denied a motion to stay the Wrongful Death claims against St. Barnabas Clinical Services and the Nursing Home. See Trial Court Order, 5/24/17. These claims remain pending before the trial court.

[3] The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

("It is settled that because contract interpretation is a question of law, our review of the trial court's decision is de novo and our scope of review plenary"); Cardinal v. Kindred Healthcare, Inc., 155 A.3d 46, 50 (Pa. Super. 2017) ("Arbitration agreements are matters of contract").

Plaintiff's first issue is not a separate issue. Plaintiff's only arguments that the Survival Act claims against the Nursing Home should have been tried in a court of law, not arbitration, are based on her claims in her second and third issues that the Arbitration Agreement is unconscionable and that a provision of the Arbitration Agreement renders it void. There is no dispute that Ms. Sofranko's son signed the Arbitration Agreement on her behalf under a Power of Attorney and that he had authority to sign the Arbitration Agreement on her behalf.

> Both Pennsylvania and federal law impose a strong public policy in favor of enforcing arbitration agreements. Accordingly, if a valid agreement to arbitrate exists and the dispute falls within the scope of the arbitration agreement, the dispute must be submitted to arbitration.

In re Estate of Atkinson, __A.3d__, 2020 WL 1671587 *4 (Pa. Super. filed Apr. 6, 2020) (citations omitted). "The only exception to a state's obligation to enforce an arbitration agreement is provided by the savings clause [of the Federal Arbitration Act, 9 USC §2], which permits the application of generally applicable state contract law defenses such as fraud, duress, or unconscionability, to determine where a valid contract exists." Taylor v.

Extendicare Health Facilities, Inc., 147 A.3d 490, 509 (Pa. 2016) (citations omitted).

This Court has explained that the defense of unconscionability has typically been construed to include procedural unconscionability, "an absence of meaningful choice on the part of one of the parties," as well as substantive unconscionability, "contract terms which are unreasonably favorable to the other party." Kohlman v. Grane Healthcare Co., 228 A.3d 920, 926 n.8 (Pa. Super. 2020) (citation omitted). In order for a contract to be held unconscionable, both procedural and substantive unconscionability must be demonstrated. E.g., Cardinal, 155 A.3d at 53; Huegel v. Mifflin Constr. Co., 796 A.2d 350, 357-58 (Pa. Super. 2002). Plaintiff bears the burden of establishing both the procedural and substantive unconscionability. Cardinal, 155 A.3d at 53; MacPherson v. Magee Memorial Hosp. For Convalescence, 128 A.3d 1209, 1221 (Pa. Super. 2015); Salley v. Option One Mortg. Corp., 925 A.2d 115, 119-20 (Pa. 2007).

Plaintiff first argues that the Arbitration Agreement is procedurally unconscionable because as a "standardized, three page, single-spaced, fine print template arbitration agreement," it "is a textbook contract of adhesion." Appellant's Brief at 18. Additionally, Plaintiff argues that the circumstances surrounding the signing of the Agreement compel a finding of procedural unconscionability.

Procedural unconscionability has been described as the lack of meaningful choice in the acceptance of contract provisions. Salley, 925 A.2d

at 119. "An adhesion contract is a 'standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms.'" Chepkevich v. Hidden Valley Resort, L.P., 2 A.3d 1174, 1190 (Pa. 2010) (quoting Black's Law Dictionary (8th Ed. 2004).

The Arbitration Agreement here states, "ARBITRATION AGREEMENT" and "READ CAREFULLY—THIS DOCUMENT AFFECTS YOUR LEGAL RIGHTS," in bold, at the top of the first page of the Arbitration Agreement. Arbitration Agreement 12/21/11, at 1. On page 2, in bold, at the bottom of the page, it further states:

> The parties to this Arbitration Agreement understand and acknowledge (1) each party has the right to seek legal counsel before signing this Arbitration Agreement, (2) the execution of this Arbitration Agreement is not a precondition to the furnishing of services to the Resident by the [the Nursing Home], (3) this Arbitration Agreement may be rescinded by written notice to the [the Nursing Home] from the Resident or the Resident's Authorized Representative within 30 days of signature, and (4) the parties signing below have received a copy of the Arbitration Agreement.

Id. at 2 (italics added).

The Arbitration Agreement also contains the following, in bold and capital letters in paragraph 8 (the next to last paragraph) on page 2:

> THE PARTIES UNDERSTAND AND AGREE THAT BY ENTERING THIS ARBITRATION AGREEMENT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHTS TO HAVE CLAIMS DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY.

- 6 -

See Arbitration Agreement 12/21/11, at 2. The Arbitration Agreement provides that the Nursing Home will pay for "filing, commencement or administration" of the arbitration, and that any other fees or costs "shall be borne according to the applicable arbitration rules or substantive law." Id. at 1. The signature line is on the third and final page of the document. Id. at 3. Directly above the signature line, the Arbitration Agreement states, "The Resident and/or Resident's Authorized Representative (has/has not) consulted with an attorney and voluntarily discloses that attorney's name as []." Id. The words "has not" were circled. Id. Thomas A. Sofranko's signature appears on the line above "Signature of Resident's Authorized Representative" along with the date 12/21/11. Id. Thomas A. Sofranko's name is printed below and there is a check mark next to the space indicated for "power of attorney." Id.

In MacPherson, this Court found a similar arbitration agreement not unconscionable where,

> in preparing for arbitration, the Agreement provides that the parties pay their own fees and costs . . . contains a conspicuous, large, bolded notification that the parties, by signing, are waiving the right to a trial before a judge or jury . . . at the top of the agreement in bold typeface and underlined, the Agreement states that it is voluntary, and if the patient refused to sign it, "the Patient will still be allowed to live in, and receive services at [the nursing home]." Also, the agreement provides that [the nursing home] will pay the arbitrators' fees and costs, and that there are no caps or limits on damages other than those already imposed by state law. Lastly, the Agreement contains a provision allowing the patient to rescind within 30 days. Our review compels our conclusion that the Agreement should not be

invalidated on the basis of procedural or substantive unconscionability.

MacPherson, 128 A.3d at 1221-22 (citations to record omitted). In Cardinal, this Court similarly relied on the following to find that the arbitration agreement was not procedurally or substantively unconscionable:

> [T]he arbitration agreement signed by the Decedent contains a capitalized, bold-faced notification at the very top of the agreement stating: "this agreement is not a condition of admission to or continued residence in the facility." Also highlighted in boldface, underlined, capital letters on the first page of the agreement is a statement that: ["]the parties understand . . . that by entering into this agreement they are giving up their constitutional right to have their disputes decided by a court of law or to appeal any decision or award.["] The agreement states the parties will each bear their own fees and costs, that [the nursing home] shall pay the arbitrators fees and costs, and that the monetary relief available via arbitration is the same as that which would be available in a court of law. Finally, the agreement states as follows: ["t]he resident understands that he or she has the right to seek the advice of legal counsel and to consult with a Facility representative concerning this Agreement; that his or her signing of this Agreement is not a condition of admission to or continued residence in the Facility; that he or she may revoke this Agreement by sending written notice to the Facility within (30) days of signing it.["]

Cardinal, 155 A.3d at 53-54 (some quotation marks, citations to record and emphasis omitted).

The Arbitration Agreement here contained all of the provisions and features of the arbitration agreements enforced in MacPherson and Cardinal. At the top of the first page, in bold, capitalized typeface, the Arbitration Agreement states that it affects the signee's legal rights. See

Arbitration Agreement at 1. The Arbitration Agreement also contains another conspicuous, large, bolded notification that by signing, the parties agree to waive their right to a trial before a judge or jury. Id. at 2. The document states that signing is not a precondition of services. Id. at 2. The Arbitration Agreement states that the Nursing Home will pay the arbitrators' fees and costs, and that there are no award caps or damage limitations beyond those already imposed by law. Id. at 1-2. The Arbitration Agreement also provides a 30–day period during which the signer has an opportunity to rescind the agreement to arbitrate. Id. at 2. The Arbitration Agreement, therefore, is not procedurally unconscionable under Pennsylvania law. See Cardinal 155 A.3d at 54 (holding substantially similar arbitration agreement not unconscionable); See MacPherson, 128 A.3d at 1222 (same).

Plaintiff next argues that the Arbitration Agreement is procedurally unconscionable because the circumstances surrounding the signing of the arbitration agreement were unfair. Plaintiff argues that Mr. Sofranko was not aware that signing any of the admission documents was optional, including the Arbitration Agreement. Appellant's Brief at 21.

It is "well established that, in the absence of fraud, the failure to read a contract before signing it is 'an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract.'" Fellerman v. PECO Energy Co., 159 A.3d 22, 28 (Pa. Super. 2017) (citation omitted). Plaintiff's argument fails because Mr. Sofranko is responsible for reading the Arbitration Agreement, which states that "the execution of this Arbitration

Agreement is not a precondition to the furnishing of services to the Resident"

by the Nursing Home. Arbitration Agreement at 2.

Plaintiff's argument that the Arbitration Agreement is substantively

unconscionable also fails. A contract is substantively unconscionable if it is

unreasonably favorable to the drafter. Salley, 925 A.2d at 119.

> In interpreting the terms of a contract, the cardinal rule
> followed by courts is to ascertain the intent of the
> contracting parties. If the contractual terms are clear and
> unambiguous on their face, then such terms are deemed to
> be the best reflection of the intent of the parties.

Commonwealth by Shapiro v. UPMC, 208 A.3d 898, 909 (Pa. 2019)

(citation omitted). Plaintiff contends that the Arbitration Agreement

unreasonably favors the Nursing Home because a provision concerning the

Medical Care Availability and Reduction of Error Act (MCARE) allows the

Nursing Home to unilaterally reject the arbitrator's decision and acts as an

unlawful cap on damages.

The MCARE provision at issue states,

> This Arbitration Agreement shall be construed in accordance
> with the Pennsylvania Uniform Arbitration Act and the
> Federal Arbitration Act. The provisions of the Pennsylvania
> Medical Care Availability and Reduction of Error Act (Mcare)
> and any amendments to that law shall be applicable to this
> Arbitration Agreement and the arbitration proceedings. If
> any claim subject to arbitration under this Arbitration
> Agreement is submitted by [the Nursing Home] to the
> Pennsylvania Medical Care Availability and Reduction of
> Error (Mcare) Fund and Mcare objects to the claim being
> heard in arbitration or otherwise refuses to
> participate if the claim is arbitrated, then [the Nursing
> Home] (at its election) may decide that this Arbitration
> Agreement is void and not enforceable as to that claim.

Arbitration Agreement at 2 (emphasis added). Plaintiff argues that this provision allows the Nursing Home to void the Arbitration Agreement if it received unfavorable rulings prior to arbitration or an unfavorable award after arbitration.

Plaintiff compares the MCARE provision in this case to the provision in Zak v. Prudential Prop. & Cas. Ins. Co., 713 A.2d 681 (Pa. Super. 1998). In Zak, this Court found a clause in an insurance contract void as it violated public policy and unreasonably favored the insurance company. The clause stated,

> a decision agreed to by two arbitrators will be binding if the award does not exceed the limits required under the Financial Responsibility Law of Pennsylvania. If an arbitration award exceeds these limits, either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within thirty days of the award.

Id. at 683. This Court found the clause "completely unconscionable" because,

> it allows the insurer to obtain a trial when the claimant or insured obtains an arbitration award of any significant amount but binds the claimant or insured to the amount of the arbitration award when the claimant or insured is awarded nothing or a miniscule amount.

Id. at 684.

The MCARE Act creates a special fund "used to pay claims against participating health care providers for losses or damages awarded in medical professional liability actions against them in excess of the basic insurance

coverage[.]" 40 P.S. § 1303.712. The Nursing Home is required to "promptly notify" MCARE of a claim as required under 40 P.S. § 1303.714(a)-(b) or the Nursing Home would be "solely responsible for the payment of the entire award[.]" Id.

Contrary to Plaintiff's assertions, the MCARE provision in the Arbitration Agreement does not permit the Nursing Home to void the Arbitration Agreement if it is dissatisfied with the arbitration proceeding. Rather the Arbitration Agreement provides that "if any claim . . . is submitted by [the Nursing Home] to . . . MCARE and MCARE objects to the claim being heard in arbitration or otherwise refuses to participate if the claim is arbitrated, then" the Nursing Home can void the Arbitration Agreement. Arbitration Agreement at 2 (emphasis added). Both scenarios thus plainly call for a decision from MCARE before arbitration begins in order for the Nursing Home to void the Arbitration Agreement. This clause is, therefore, not unreasonably favorable to the Nursing Home. Upon review of the Arbitration Agreement and consideration of the Federal policy favoring arbitration, we conclude that the Arbitration Agreement is neither procedurally or substantively unconscionable.

Plaintiff also argues that the Arbitration Agreement is unenforceable because the Nursing Home breached its duty of good faith and fair dealing by including a clause stating the National Arbitration Forum (NAF) will govern the arbitration two years after the NAF agreed to cease all consumer arbitrations. Plaintiff's Brief at 29.

The Arbitration Agreement states,

> Any arbitration under this Arbitration Agreement will be governed by the National Arbitration Forum code of Procedure, which is incorporated into this Arbitration Agreement, except if modified by the terms of this Arbitration Agreement, or, if the National Arbitration Forum Code of Procedure cannot be used, then the arbitration will be conducted pursuant to the Pennsylvania Uniform Arbitration Act.

Arbitration Agreement at 1. The Arbitration Agreement also contains a severability clause, which states, "[t]he provisions of this Arbitration Agreement are severable." Id.

In MacPherson, an almost identical clause was at issue, "the Panel shall apply NAF's code of Procedure . . . unless otherwise stated in this agreement." MacPherson, 128 A.3d at 1225. The agreement also stated that "[d]iscovery shall be governed by NAF's Code of Procedure." Id. This Court concluded that the provisions specifying the use of the NAF Code were not "integral parts of the Agreement and do not render the Agreement invalid" and rejected the appellant's contention that inclusion of the provisions rendered the arbitration agreement unenforceable. MacPherson, 128 A.2d at 1225. This Court held that,

> [in] the instant absence of an exclusive forum-selection clause, we hold that the provisions relating to the use of the [NAF] 2006 Code are not integral to the agreement. Moreover, because the provisions referring to the use of the [NAF] 2006 Code are not integral to the Agreement . . . they can be severed under the severance provision[.]

Id. at 1225.

The Arbitration Agreement here is indistinguishable from the agreement that this Court held was valid and enforceable in MacPherson. The Arbitration Agreement does not provide for an exclusive forum-selection clause. The Arbitration Agreement provides for the arbitration to be governed by the NAF Code of Procedures, "except if modified by the terms of this Arbitration Agreement, or, if the National Arbitration Forum Code of Procedure cannot be used, then the arbitration will be conducted pursuant to the Pennsylvania Uniform Arbitration Act." Arbitration Agreement at 1. Additionally, the Arbitration Agreement contains a severability clause and the NAF provision can be severed. Id. at 2. Therefore, its inclusion did not invalidate the Arbitration Agreement. See MacPherson, 128 A.3d at 1225. Accordingly, we affirm the judgment.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/10/2020