J-A25034-21

2022 PA Super 118

| | | |
|---|---|---|
| DEBRA KOHLMAN, ADMINISTRATRIX OF THE ESTATE OF FAY A. VINCENT, DECEASED | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| GRANE HEALTHCARE COMPANY; HIGHLAND PARK CARE CENTER, LLC D/B/A HIGHLAND PARK CARE CENTER; GRANE ASSOCIATES, LP; GRANE ASSOCIATES, INC.; GRANE PROPERTIES, INC.; TREBO, INC.; HIGHLAND PARK PROPERTIES, LLC; UNIVERSITY OF PITTSBURGH MEDICAL CENTER A/K/A UPMC; UPMC PRESBYTERIAN SHADYSIDE; UPMS SHADYSIDE HOSPITAL | : : : : : : : : : : : : : : : | No. 103 WDA 2021 |
| APPEAL OF: GRANE HEALTHCARE COMPANY; HIGHLAND PARK CARE CENTER, LLC D/B/A HIGHLAND PARK CARE CENTER; GRANE ASSOCIATES, LP; GRANE ASSOCIATES, INC.; GRANE PROPERTIES, INC.; TREBO, INC.; HIGHLAND PARK PROPERTIES, LLC | : : : : : : : : : : | |

Appeal from the Order Entered November 30, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 18-010949

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                           **FILED: JULY 5, 2022**

Highland  Park  Care  Center,  LLC,  d/b/a  Highland  Park  Care  Center

(Highland  Park),  Grane  Healthcare  Company,  Grane  Associates,  LP,  Grane

---

[*] Retired Senior Judge assigned to the Superior Court.

Associates, Inc., Grane Properties, Inc., Trebro, Inc., and Highland Park Properties, LLC (collectively, the Highland Park Defendants) appeal from the order of the Court of Common Pleas of Allegheny County (trial court) overruling their preliminary objection that sought to compel arbitration of claims asserted against them by Debra Kohlman (Plaintiff), Administratrix of the Estate of Fay A. Vincent (Decedent).  For the reasons set forth below, we affirm.

This action arises out of Decedent's 2017 admission to and stay at Highland Park, a skilled nursing home facility in Pittsburgh.  On January 30, 2017, Decedent was discharged from a Pittsburgh hospital and was admitted to Highland Park for care and rehabilitation.  Highland Park Progress Notes, 1/30/17-1/31/17.  At the time of her admission, Decedent was 67 years old and was suffering from a number of conditions, including congestive heart failure, diabetes, and pressure ulcers.  ***Kohlman v. Grane Healthcare Co. (Kohlman I)***, 228 A.3d 920, 921 & n.1 (Pa. Super. 2020); Highland Park Resident Assessment and Care Screening at 22-31.  Highland Park's assessment of Decedent's condition at the time of her admission reported that she was alert and oriented and had no memory problems or dementia, but that she was also suffering from anxiety and sometimes had trouble concentrating.  Highland Park Resident Assessment and Care Screening at 7-10, 22-23.  Highland Park's assessment also reported that Decedent's vision was impaired to the point that even with glasses, she was "not able to see

- 2 -

newspaper headlines but can identify objects" and listed as one of her diagnoses "[b]lindness, both eyes." *Id.* at 6, 23. Highland Park's assessment reported that Decedent expressed that it was very important to her to have her family or a close friend involved in discussions about her care. *Id.* at 13.

In connection with her admission to Highland Park, Decedent signed a number of documents, including a seven-page Nursing Services Agreement, a two-page Agreement to Arbitrate Disputes (the Arbitration Agreement), and a Resident Representative Agreement concerning the handling of her finances, in which Decedent designated herself as her representative. Highland Park Resident Admission Package. The Arbitration Agreement provided:

### PLEASE READ CAREFULLY, YOU ARE GIVING UP YOUR RIGHT TO SUE [HIGHLAND PARK] IN COURT

Resident and [Highland Park] agree that all matters in dispute between Resident and [Highland Park], its agents, servants, employees, officers, contractors and affiliates (hereinafter "the parties"), including but not limited to claims for personal injuries or any controversy or claim between the parties arising out of or relating to the agreement for admission and for the provision of nursing facility services, whether by virtue of contract, tort or otherwise, including the scope of this arbitration agreement and the arbitrability of any claim or dispute shall be resolved exclusively by binding arbitration. Such arbitration shall be conducted in the county in which [Highland Park] is located and in accordance with the terms of this Agreement and the Pennsylvania Uniform Arbitration Act, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

To the extent the parties can agree upon a single, neutral arbitrator, that single arbitrator shall hear and decide the controversy. To the extent the parties cannot agree on a single arbitrator, any party may request one to be appointed by the

court. The parties shall be entitled to limited discovery, the manner and scope of which shall be governed by the arbitrator.

The parties agree that any administrative fees and costs, including the fees of the arbitrator, shall be split equally between the parties, and that each party shall be responsible for their own attorneys' fees.

In the event a court having jurisdiction finds any portion of this agreement unenforceable, then that portion shall not be effective and the remainder of the agreement shall remain effective.

**Resident retains all rights under federal and state law to file grievances with or to complain to authorities or advocacy groups concerning care and treatment**

This agreement binds all persons whose claims may arise out of or relate to treatment or service provided by [Highland Park] or whose claim is derived through or on behalf of the Resident including any spouse, parent, sibling, child, guardian, executor, legal representative, administrator, heir, or survivor of the Resident, as well as anyone entitled to bring a wrongful death claim relating to the Resident. This agreement applies to [Highland Park's] agents, servants, employees, officers, contractors and affiliates.

The parties understand that as a result of this arbitration agreement, any claims that the parties may have against the other cannot be brought as a lawsuit in court before a judge or jury, and agree that all such claims will be resolved as described in this agreement.

Resident understands that he/she has the right to consult legal counsel concerning this arbitration agreement; that execution of this arbitration agreement is not a condition of admission or to the furnishing of services to Resident by [Highland Park]; and that this arbitration agreement may be rescinded by written notice delivered to [Highland Park] within ten (10) days of signature. If not rescinded within ten (10) days, this agreement shall remain in effect for all subsequent stays at [Highland Park], even if Resident is discharged and readmitted to [Highland Park].

The undersigned certifies that he/she has read this arbitration agreement and that it has been fully explained to him/her, that

he/she understands its contents, and that he/she is the Resident or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms.

Arbitration Agreement, 2/1/17 (emphasis in original). Decedent and Highland Park's admissions director both signed the Arbitration Agreement and the admissions director printed their names and dated it. *Id.* at 2; Blasco Dep. at 10, 32-33, 44, 54.

Decedent died approximately three months after she was admitted to Highland Park. *Kohlman I*, 228 A.3d at 922. On August 27, 2018, Plaintiff, who is Decedent's daughter, filed this negligence action against the Highland Park Defendants, a hospital that had treated her, and the hospital's affiliates asserting survival and wrongful death claims. The Highland Park Defendants filed preliminary objections that sought, *inter alia*, to compel arbitration of Plaintiff's claims. By order entered on January 8, 2019, the trial court denied Highland Park Defendants' preliminary objection to compel arbitration. The Highland Park Defendants appealed this order and the trial court issued an opinion in which it concluded that the Arbitration Agreement could not bind wrongful death claimants and that arbitration of the survival claims could not be required because the Arbitration Agreement was unconscionable. Trial Court Opinion, 3/13/19, at 2-4. The trial court based its conclusion that the Arbitration Agreement was unconscionable on Decedent's condition when she signed it coupled with the requirement that she pay half of the costs of arbitration, which the trial court characterized as an "overreach." *Id.* at 4.

On February 10, 2020, this Court affirmed the denial of arbitration with respect to the wrongful death claim, but held with respect to the survival claims that the record was inadequate to determine whether the Arbitration Agreement was unconscionable. **Kohlman I**, 228 A.3d at 926-27. This Court accordingly vacated the trial court's denial of arbitration with respect to the survival claims and remanded the case for discovery and further proceedings to address, *inter alia*, the following:

> • [D]ecedent's physical and mental state at the time that she executed the Arbitration Agreement;
>
> • whether [D]ecedent was accompanied by anyone at this time;
>
> • the nature of the admission agreement that [D]ecedent executed (and whether the Arbitration Agreement was part of, or buried within, a potentially lengthy admissions packet that [D]ecedent was required to complete, while in ill health);
>
> • whether the Hospital sent the ill [D]ecedent directly to Highland Park upon her discharge from the Hospital;
>
> • whether [D]ecedent was aware that she could receive treatment from other skilled nursing care facilities, and whether she had the ability to research other options;
>
> • whether [D]ecedent was economically constrained to enter into an agreement with Highland Park to provide her care (and relatedly, whether she had the means to pay for arbitration).

**Id.** at 927 (footnote omitted).

On remand, the parties took discovery on these issues and, following further briefing and submission of evidence from that discovery, the trial court reaffirmed its conclusion that the Arbitration Agreement was unconscionable and again overruled the Highland Park Defendants' preliminary objection to

compel arbitration. Trial Court Order, 11/30/20; Trial Court Opinion, 11/30/20, at 6. With respect to the specific issues raised by this Court, the trial court found that Decedent was not incompetent, but was not well and was in severe pain and medicated at the time that she signed the Arbitration Agreement. *Id.* at 4. The trial court found that Decedent was alone when she was asked to sign the Arbitration Agreement, that Decedent was not given a chance to read the Arbitration Agreement and other admission documents before signing, that Decedent was not given a copy of the Arbitration Agreement after she signed, even though it permitted her to rescind within ten days, and that the admissions director did not read or explain to Decedent all of Arbitration Agreement's provisions. *Id.* at 4-5. The trial court also found that Decedent was transferred directly from the hospital to Highland Park and that it was more likely than not that she did not have awareness of ability to research other nursing care options and concluded that Decedent's financial condition was irrelevant to whether the Arbitration Agreement was unconscionable. *Id.* at 5.

The Highland Park Defendants again timely appealed the trial court's denial of arbitration. Although the trial court's order is not a final order, we have jurisdiction over this appeal because an order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right pursuant to 42 Pa.C.S. § 7320(a)(1) and Pa.R.A.P. 311(a)(8). *Saltzman v. Thomas Jefferson University Hospitals, Inc.*, 166 A.3d 465,

468 n.1 (Pa. Super. 2017); *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 49 n.1 (Pa. Super. 2017).

Our review of a decision denying preliminary objections to compel arbitration is limited to determining whether the court's findings are supported by substantial evidence and whether the court abused its discretion in denying arbitration. *Kohlman I*, 228 A.3d at 923; *Saltzman*, 166 A.3d at 471; *Cardinal*, 155 A.3d at 49-50. Interpretation of the parties' contract is a question of law as to which our review is *de novo* and plenary. *Traver v. Reliant Senior Care Holdings, Inc.*, 228 A.3d 280, 285 (Pa. Super. 2020). The issue of unconscionability is a question of law, but can turn on factual determinations. *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 124 (Pa. 2007) ("While … the determination of whether an agreement is unconscionable is ultimately a question of law, … the necessary inquiry is often fact sensitive"); *Kohlman I*, 228 A.3d at 926-27 & n.10.

Both Pennsylvania and federal law impose a strong public policy in favor of enforcing arbitration agreements. *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 532-33 (2012); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *In re Estate of Atkinson*, 231 A.3d 891, 898 (Pa. Super. 2020); *Cardinal*, 155 A.3d at 52. Under the Federal Arbitration Act, 9 U.S.C. § 2, our courts are required to compel arbitration of claims that are subject to a valid arbitration agreement. *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 509 (Pa.

2016); ***Estate of Atkinson***, 231 A.3d at 900; ***Kohlman I***, 228 A.3d at 925. Enforcement of an agreement to arbitrate may be denied only where the party opposing arbitration proves that a contract defense that applies equally to non-arbitration contracts invalidates the agreement to arbitrate. ***Taylor***, 147 A.3d at 509; ***Kohlman I***, 228 A.3d at 925-26; ***Saltzman***, 166 A.3d at 471.[1]

The only contract defense that the trial court found applicable to the Arbitration Agreement was the defense of unconscionability. To invalidate or bar enforcement of a contract based on unconscionability, the party challenging the contract must show both an absence of meaningful choice, also referred to as procedural unconscionability, and contract terms that are unreasonably favorable to the other party, known as substantive unconscionability. ***Salley***, 925 A.2d at 919-20; ***Cardinal***, 155 A.3d at 53; ***MacPherson v. Magee Memorial Hospital for Convalescence***, 128 A.3d 1209, 1221 (Pa. Super. 2015). Procedural and substantive unconscionability are assessed under a sliding-scale approach, with a lesser degree of

---

[1] Plaintiff argues that Federal Arbitration Act does not apply here and that arbitration may be denied on grounds other than generally applicable contract defenses because the Arbitration Agreement references the Pennsylvania Uniform Arbitration Act, Arbitration Agreement at 1, and is a separate agreement. This argument is without merit. In ***Taylor***, the arbitration agreement that our Supreme Court held was subject to the Federal Arbitration Act was also a separate document, rather than a provision of a nursing home services agreement, and likewise referenced the Pennsylvania Uniform Arbitration Act. 147 A.3d at 494. There is therefore no basis for holding that the Arbitration Agreement here is not equally subject to the Federal Arbitration Act.

substantive unconscionability required where the procedural unconscionability is very high. *Salley*, 925 A.2d at 125 n.12; *Lomax v. Care One, LLC*, No. 344 WDA 2020, at 8-9, 18 (Pa. Super. March 5, 2021) (unpublished memorandum).

The Highland Park Defendants argue that the trial court erred in finding the Arbitration Agreement unconscionable because Plaintiff did not prove that the Arbitration Agreement was both procedurally and substantively unconscionable. We do not agree.

The trial court found that the Arbitration Agreement was procedurally unconscionable because Decedent was in pain and was medicated at the time that she signed the Arbitration Agreement, Decedent was alone when she was asked to sign the Arbitration Agreement, had no opportunity to read the Arbitration Agreement and was not given a copy to review, and the provisions of the Arbitration Agreement were not fully read or explained to Decedent. Trial Court Opinion, 11/30/20, at 4-5. The record supports these determinations.

Decedent's medical records show that she was receiving Oxycodone and Xanax from the day that she was admitted to Highland Park through February 1, 2021. Highland Park Progress Notes, 1/30/17-2/1/17. The admissions director testified that no one else was with Decedent when she obtained Decedent's signatures on the Arbitration Agreement and other documents in the admissions packet. Blasco Dep. at 34. The admissions director did not

recall what she and Decedent said or discussed when she presented the Arbitration Agreement and other admissions documents to Decedent for signing and testified to what she generally does with all residents. *Id.* at 32-37, 57-61, 64. The admissions director testified that when she has residents sign the admissions documents, "I usually just sit beside them and go over the paperwork and read -- I guess you can say that I read it to them." *Id.* at 36. The admissions director testified that residents can remain at Highland Park even if they refuse to sign any of the admissions documents and that she tells residents that the whole admission packet is optional, but that she does not tell them that they can sign the other documents and refuse the arbitration agreement. *Id.* at 37-38, 55-56. The admissions director testified that while she can recall residents refusing to sign any of the documents, she does not recall any resident ever refusing only the arbitration agreement or seeking to revoke an arbitration agreement. *Id.* at 27-28, 40, 53. The admissions director testified that she did not tell Decedent that she could consult an attorney before signing the Arbitration Agreement and that she has never told any resident that the resident has a right to revoke the agreement to arbitrate after signing. *Id.* at 38, 40.[2] The admissions director did not testify that she

---

[2] The admissions director under examination by the Highland Park Defendants' counsel later testified that she typically reads the Arbitration Agreement to residents in its entirety, including the paragraph discussing those subjects. Blasco Dep. at 64-65. The trial court, however, was not required to find that this testimony overrode her prior unequivocal testimony that she did not give

*(Footnote Continued Next Page)*

gave Decedent a copy of any of the documents that she had Decedent sign or told her to have a family member or any other person read over the paper work for her.

The incompleteness of the information that was orally provided to Decedent and the fact that Decedent had no family member with her and was not given a copy for a family member to review are particularly significant here given Decedent's physical inability to read the Arbitration Agreement and other documents that she was signing. The record shows that when she arrived at Highland Park, Decedent was sufficiently blind that she was unable to even read newspaper headlines. Highland Park Resident Assessment and Care Screening at 6, 23. The admissions director did not testify that she took any additional steps to ensure that Decedent had a full opportunity to know what she was signing in light of her inability to read the documents herself. Rather, the admissions director testified that "[n]othing stands out that there were any issues with [Decedent] signing [the Arbitration Agreement]." Blasco Dep. at 37. It also does not appear that Highland Park lacked the ability to locate and communicate with family members. Highland Park's records show that Decedent's daughter and granddaughters were with her when she arrived at Highland Park from the hospital. Highland Park Progress Note, 1/30/17 22:10.

---

this information to residents, particularly in light of her testimony that no resident has ever sought to revoke an arbitration agreement after signing.

Given Decedent's lack of ability to read the Arbitration Agreement, our decisions holding that nursing home arbitration agreements were not procedurally unconscionable are inapposite here. In those cases, there was no evidence or claim that the individuals who signed the arbitration agreements lacked the ability to read them and the written agreements that the signers could have read clearly stated that signing the arbitration agreement was not required for nursing home admission, that they had right to consult a lawyer before signing, and that they had a right to revoke the arbitration agreement. *Cardinal*, 155 A.3d at 52-54; *MacPherson*, 128 A.3d at 1212-18, 1220-22; *Glomb v. St. Barnabas Nursing Home, Inc.*, No. 1724 WDA 2018, at 4, 6-10 (Pa. Super. September 10, 2020) (unpublished memorandum); *Davis v. 1245 Church Road Operations, LLC*, No. 3539 EDA 2018, at 10-12 (Pa. Super. April 16, 2020) (unpublished memorandum).

Here, in contrast, although the Arbitration Agreement contains such provisions, the record shows that those provisions were omitted from or not fully and accurately stated in the oral information given to Decedent, which was the only information that Decedent had when she decided to sign the Arbitration Agreement. Because Decedent was not fully orally advised of this information and was denied the ability to obtain assistance from a family member or other person not employed by Highland Park who could read the Arbitration Agreement, the process by which Decedent's signature was

obtained denied her a meaningful choice and therefore was procedurally unconscionable.

On the issue of substantive unconscionability, the trial court found that the provision requiring that Decedent pay one-half of the costs of any arbitration, including one-half of the arbitrator's fees, was substantively unconscionable because it imposed additional expenses for bringing a claim that Decedent would not have to bear in a court action. Trial Court Opinion, 3/13/19, at 4; Trial Court Opinion, 11/30/20, at 5-6. We agree that imposing this additional expense on all claims for damages brought by a resident unreasonably favors the nursing home and is sufficient to satisfy the requirement of substantive unconscionability where, as here, the record establishes that the resident was not given full information concerning her choices or any opportunity to inform herself of what she was signing or to exercise those choices.

The cases where this Court has rejected claims of substantive unconscionability are not to the contrary. In *Cardinal*, *MacPherson*, and *Glomb*, the arbitration agreements did not require the resident to pay any arbitrator fees to litigate a claim against the nursing home. Rather, in all of those cases, the arbitration agreements provided that the nursing home would pay the arbitrators' fees and this Court specifically noted this fact in holding that the agreements were not unconscionable. *Cardinal*, 155 A.3d at 53-54; *MacPherson*, 128 A.3d at 1217, 1222; *Glomb*, slip op. at 7, 9.

In ***Riley v. Premier Healthcare Management, LLC***, No. 3538 EDA 2019 (Pa. Super. May 28, 2021) (unpublished memorandum), this Court held that an arbitration agreement that required the nursing home resident to pay one-half of the costs of arbitration was not substantively unconscionable. Slip op. at 7-8, 18-19. In ***Riley***, however, the arbitration provisions did not require the resident to arbitrate all claims against the nursing home regardless of whether the costs of arbitration would be an impediment to asserting a claim, as they specifically excluded claims under $12,000 from mandatory arbitration. ***Id.*** at 4, 6. Moreover, in ***Riley***, the decedent had the opportunity to read the arbitration provisions, which were set forth in all capital letters, and the plaintiff did not argue that requiring the payment of half of arbitration costs by an individual claimant created an impediment to asserting claims against the nursing home. ***Id.*** at 3, 12, 16-18.

The Highland Park Defendants also argue that if the provision requiring payment of half of the costs of arbitration renders the Arbitration Agreement unconscionable, the trial court should have severed that provision and enforced the remainder of the Arbitration Agreement. This contention likewise fails.

Where an arbitration agreement contains a severability clause and a provision of the agreement that is not an integral part of the agreement to arbitrate is unenforceable, that separate provision may be stricken and the remainder of the arbitration agreement may be enforced. ***Fellerman v.***

*PECO Energy Co.*, 159 A.3d 22, 29 (Pa. Super. 2017); *MacPherson*, 128 A.3d at 1225-26. Thus, where a severability clause is present, a non-exclusive designation of a particular arbitration forum that has become unavailable may be severed and does not invalidate the agreement to arbitrate. *MacPherson*, 128 A.3d at 1222-26. A limitation on damages that is void as against public policy that can also be stricken from an agreement to arbitrate and the remainder of the agreement may be enforced where a severability clause is present and the damage limitation is separate and distinct from the agreement to arbitrate. *Fellerman*, 159 A.3d at 28-29; *Davis*, slip op. at 13-14.

The Arbitration Agreement contains a severability clause that provides that "[i]n the event a court having jurisdiction finds any portion of this agreement unenforceable, then that portion shall not be effective and the remainder of the agreement shall remain effective." Arbitration Agreement at 1. Severance, however, cannot remove the unconscionability that the trial court found here for two reasons.

First, the determination is not that requiring nursing home residents to share the cost of an arbitrator's fees is so unreasonable that it is *per se* against public policy and inherently unenforceable. The Arbitration Agreement is unconscionable because imposing that further expense for litigation by an individual is sufficiently unreasonably favorable to the nursing home to satisfy the requirement of substantive unconscionability when coupled with the high degree of procedural unconscionability that is present here. No such

procedural unconscionability was present in **Fellerman**, **MacPherson**, or **Davis**, where this Court held that the provision in question could be severed from the arbitration agreement. **Fellerman**, 159 A.3d at 27-28; **MacPherson**, 128 A.3d at 1221-22; **Davis**, slip op. at 10-12.

Second, severance would only remove the arbitration fee provision requiring the fees to be split evenly, but would not require the Highland Park Defendants to pay all the arbitration fees, like the agreements we upheld in **Cardinal**, **MacPherson**, and **Glomb**. Without the essential provision of who will pay the arbitration fees, there is no arbitration agreement to enforce. Here, the parties did not simply omit a term, in which case, the court could supply a reasonable one for them. **See**, **e.g.**, **Greene v. Oliver Realty Inc**., 526 A.2d 1192, 1194 (Pa. Super. 1987). Instead, one party clearly sought to take advantage of the other. Under these circumstances, we decline to provide an alternate fee provision and allow the arbitration agreement to stand.

Because the circumstances under which Highland Park obtained Decedent's signature on the Arbitration Agreement imposed terms unfavorable to her without giving her any meaningful choice to accept or reject the Arbitration Agreement, the trial court correctly concluded that the Arbitration Agreement was unconscionable as a matter of law. Accordingly, we find no abuse of discretion and affirm the trial court's order overruling the Highland Park Defendants' preliminary objection to compel arbitration.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/5/2022