IN THE UNITED STATES DISTRICT COURT 
 FOR THE EASTERN DISTRICT OF PENNSYLVANIA 
JUDY PAN 
 Plaintiff, 
 v. CIVIL ACTION NO. 22-3695 
TEMPLE UNIVERSITY HOSPITAL, INC. 
 Defendant. 

 MEMORANDUM OPINION 
Rufe, J. September 11, 2024 

 Plaintiff Judy Pan has sued Temple University Hospital, Inc., where she completed a 
three-year residency in plastic surgery, alleging that she was subjected to discrimination and 
retaliation.1 Defendant Temple has moved for summary judgment on all claims. For the reasons 
explained below, Temple’s motion will be granted. 
 I. LEGAL STANDARD 
 Under Federal Rule of Civil Procedure Rule 56(a), summary judgment may be granted if 
there is no issue of material fact, and the moving party is entitled to judgment as a matter of 
law.2 A fact is “material” if resolving the dispute over the fact “might affect the outcome of the 
suit under the governing [substantive] law.”3 A dispute is “genuine” if “the evidence is such that 
a reasonable jury could return a verdict for the nonmoving party.”4 

1 Dr. Pan asserts claims for discrimination and retaliation under Title VII, the Pennsylvania Human Relations Act 
(“PHRA”), and the Philadelphia Fair Practices Ordinance (“PFPO”). Plaintiff also pursues claims under 
Pennsylvania common law for breach of contract and breach of the duty of good faith and fair dealing. 
2 See Fed. R. Civ. P. 56(a). 
3 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). 
4 Id. 
 A court “must view the facts in the light most favorable to the non-moving party,” and 
make every reasonable inference in that party’s favor.5 Further, “a court may not weigh the 
evidence or make credibility determinations.”6 Nevertheless, the party opposing summary 
judgment must support each essential element of the opposition with concrete evidence in the 
record.7 “If the evidence is merely colorable, or is not significantly probative, summary 

judgment may be granted.”8 
 II. FACTUAL BACKGROUND 
 Some of the relevant facts are stipulated by the parties; where the facts are in dispute they 
are viewed in the light most favorable to Dr. Pan as the non-moving party to the extent they are 
supported by evidence.9 In August 2016, Dr. Pan began her employment with Temple as a 
resident in plastic surgery.10 She completed the three-year program and as of August 1, 2019, 
was no longer an employee of Temple.11 The program directors during Dr. Pan’s residency 
included Dr. Jim Fox and Dr. Sameer Patel.12 
 In 2017, at the beginning of Dr. Pan’s second year of residency, Temple put into place a 
written policy that a first-year resident who did not score at least in the 20th percentile on the in-

5 Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted). 
6 Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). 
7 Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). 
8 Anderson, 477 U.S. at 249–50 (internal citations omitted). 
9 Defendant filed a “Statement of Stipulated Material Facts” (“SMF”), setting forth those facts accepted by both 
parties. [Doc. No. 20]. Defendant also filed a separate “Statement of Undisputed Facts Material to the Motion of 
Defendant . . . to which Plaintiff, without Basis, Would Not Agree.” [Doc. No. 21]. Plaintiff filed a “Response in 
Opposition to Defendant’s Statement” that repeated long paragraphs stating Plaintiff’s position [Doc. No. 23-3]. 
Plaintiff also filed a “Statement of Material Facts in Opposition to Defendant’s Motion for Summary Judgment.” 
[Doc. No. 23-4]. 
10 SMF ¶ 13. 
11 SMF ¶ 14. 
12 J. Pan Dep. Tr. [Doc. No. 20-2] at 35; S. Patel Dep. Tr. [Doc. No. 20-4] at 17. 
service examination would be placed on remediation, and if they failed to meet the cut-off again 
in their second year, the resident would be placed on probation.13 Dr. Pan scored below the cut-
off and was placed on probation on July 11, 2018.14 Although other hospitals do not have such 
policies regarding these examinations, Dr. Pan testified in her deposition that she had seen the 

policy, that the policy stated that probation was a reportable status, meaning that it had to be 
reported to outside entities (including licensing boards), and that she understood the policy.15 
Dr. Pan also testified that she knew she had been placed on academic probation on July 11, 
2018,16 and she knew that if she did not score in the 20th percentile in her third year she would 
not be allowed to take the plastic surgery Board Examination (the “Boards”) for one year.17 
 During her third year, Dr. Pan again did not score in the 20th percentile on the in-service 
exam.18 Dr. Pan is the only plastic surgery resident who did not meet the cut-off score in the 
third year of residency and had to defer taking the Boards for a year.19 However, Dr. Pan 
contends that she was told that she had to defer, while D.A.20, a male resident, was permitted to 
register for the Boards before the scores were released. D.A. did meet the cut-off score.21 

 In addition to the probationary status related to the in-service exam, Dr. Pan was given a 
remediation plan based on several incidents relating to clinical matters.22 One of these occurred 

13 J. Pan Dep. Tr. [Doc. No. 20-2] at 112; S. Patel Dep. Tr. [Doc. No. 20-4] at 45. 
14 J. Pan Dep. Tr. [Doc. No. 20-2] at 112. 
15 J. Pan Dep. Tr. [Doc. No. 20-2] at 111. 
16 J. Pan Dep. Tr. [Doc. No. 20-2] at 118. 
17 J. Pan Dep. Tr. [Doc. No. 20-2] at 120, 122. A doctor may practice plastic surgery without having taken the 
Boards. Id. 
18 J. Pan Dep. Tr. [Doc. No. 20-2] at 120. 
19 J. Pan Dep. Tr. [Doc. No. 20-2] at 286. 
20 Residents who are not parties to the litigation are referred to by their initials. 
21 Pl.’s Ex. W [Doc. No. 23-27] at 16. 
22 J. Pan Dep. Tr. [Doc. No. 20-2] at 88, 137. 
in October 2017. Dr. Pan was performing surgery under the supervision of attending surgeon 
Dr. Janelle Wagner when Dr. Pan dissected too deeply into the pleural space of the patient.23 
Dr. Pan repaired the defect and followed Dr. Wagner’s instruction to order a chest x-ray after the 
patient was moved to recovery.24 Dr. Pan did not review the x-ray, but before leaving the 

hospital, Dr. Pan spoke to the covering resident about the pending x-ray and also sent an email to 
J.M., the resident who would be covering overnight.25 Dr. Pan asserts that she followed the 
proper procedure, and that there was no formal policy as to such transitions of care or sign-
outs.26 The overnight cover resident, J.M., did not check his email until the next morning.27 Only 
Dr. Pan faced repercussions for the incident.28 
 In June 2018, Dr. Wagner sent Dr. Patel an email detailing the October incident and other 
issues involving Dr. Pan, including the improper placement of a wound vacuum too close to a 
patient’s colostomy bag that resulted in the patient developing sepsis, a missed diagnosis of hand 
compartment syndrome, and failure to notify Dr. Wagner of a patient with a facial fracture.29 Dr. 
Pan was placed on remediation on July 11, 2018. On July 27, 2018, Dr. Pan wrote to Susan 

Coull, stating that she believed the remediation was unjustified and evidence of unfair 
treatment.30 

23 J. Pan Dep. Tr. [Doc. No. 20-2] at 58. 
24 J. Pan Dep. Tr. [Doc. No. 20-2] at 59. 
25 J. Pan Dep. Tr. [Doc. No. 20-2] at 64. The parties refer to those residents by their initials. 
26 J. Pan Dep. Tr. [Doc. No. 20-2] at 66. 
27 J. Pan Dep. Tr. [Doc. No. 20-2] at 74. 
28 Pl. Compl. ¶ 44 [Doc. No. 20-1]. 
29 Def.’s Ex. J [Doc. No. 21-10] at 1. 
30 J. Pan Dep. Tr. [Doc. No. 20-2] at 98-99. 
 On August 10, 2018, Dr. Pan was placed on a performance improvement plan (“PIP”).31 
Dr. Pan sent Dr. Patel an email on August 12, 2018, in response to the PIP, stating that she 
“believe[d] the grounds for remediation is [sic] unreasonable, biased, and discriminatory.”32 
Dr. Pan stated in the email that she had discussed her concerns with “HR, the GME office, as 
well as the program director and chair” but that she “could not make an official complaint.”33 

Dr. Pan successfully completed the PIP, and the remediation terminated on December 5, 2018, 
although Dr. Pan states that she was not informed of this fact.34 
 On November 8, 2018, Dr. Pan notified Dr. Patel that she had “matched” for a 
craniofacial plastic surgery fellowship at Stanford University, to begin after Dr. Pan completed 
her residency at Temple.35 Dr. Patel wrote letters of recommendation for Dr. Pan’s application 
for this fellowship.36 After Dr. Pan matched at Stanford, she submitted a Federal Credentials 
Verification Service (“FCVS”) form, which was completed by Tiffany Copeland, Temple’s 
program administrator, and signed by Dr. Patel.37 The FCVS form as completed by Temple 
included yes answers to two questions: “Was this individual ever placed on probation?” and 

“Were any limitations or special requirements placed upon this individual because of questions 
of academic incompetence, disciplinary problems or any other reason?”38 In the explanation 
section, Temple stated that Dr. Pan was “[p]laced on academic probation as a result of two 

31 J. Pan Dep. Tr. [Doc. No. 20-2] at 90-91; SMF Ex. 10 [Doc. No. 20-10] at 1. 
32 SMF ¶ 19; SMF Ex. 10 [Doc. No. 20-10] at 3. 
33 SMF Ex. 10 [Doc. No. 20-10] at 3. GME refers to the department of Graduate Medical Education, which was 
overseen at the relevant time by Susan Coull. S Coull Dep. Tr. [Doc. No. 20-3] at 10. 
34 . 
35 SMF ¶ 23; J. Pan Dep. Tr. [Doc. No. 20-2] at 136. 
36 SMF ¶ 23; J. Pan Dep. Tr. [Doc. No. 20-2] at 135–136. 
37 SMF ¶¶ 25–26; J. Pan Dep. Tr. [Doc. No. 20-2] at 186. 
38 SMF Ex. 14 [Doc. No. 20-14] at 4. 
consecutive years of failing to achieve the 20th percentile on the ASPS in-service examination 
per the program policy.”39 
 On November 22, 2018, Dr. Pan applied for a medical license from the State Board of 
California and answered no to the question of whether she had been placed on probation for any 
reason, although she had been placed on academic probation four months earlier.40 On February 

18, 2019, the California Medical Board sent Dr. Pan an email noting Temple’s positive response 
on the FCVS and writing that Temple was required to provide a written explanation for this 
answer.41 Dr. Pan forwarded the email to Dr. Patel, who responded on February 26, 2019, 
writing that Dr. Pan was placed on probation for failing to achieve the 20th percentile on the 
annual in-service exam for two consecutive years, and that Dr. Pan was placed on remediation 
that had been successfully completed.42 Dr. Patel also wrote, “I recommend Dr. Pan receive her 
medical license and anticipate her successfully completing the Plastic Surgery Fellowship” at 
Temple.43 Temple provided similar information again at the request of the California Medical 
Board in September 2019.44 

 On September 26, 2019, the California Medical Board provisionally denied Dr. Pan an 
unrestricted license based on her failure to disclose that she had been placed on academic 
probation.45 The letter did not refer to remediation.46 Dr. Patel wrote to the Board on October 1, 

39 SMF Ex. 14 [Doc. No. 20-14] at 4. 
40 SMF ¶¶ 27, 30; SMF Ex. 15 [Doc. No. 20-15] at 3. 
41 SMF ¶¶ 31–32; SMF Ex. 16 [Doc. No. 20-16] at 1. 
42 SMF Ex. 17 [Doc. No. 20-17] at 1. 
43 SMF ¶ 32; SMF Ex. 17 [Doc. No. 20-17] at 2. 
44 SMF ¶ 33; SMF Exs. 18–19 [Doc. Nos. 20-18; 20-19]. 
45 SMF ¶ 34; SMF Ex. 20 [Doc. No. 20-20] at 1. 
46 SMF ¶ 36 SMF Ex. 20 [Doc. No. 20-20] at 1. 
2019, urging that it issue Dr. Pan an unrestricted license. 47 On December 31, 2019, the Board 
issued a full, unrestricted medical license to Dr. Pan.48 Dr. Pan completed her fellowship at 
Stanford and is now employed as an attending plastic surgeon at the University of Maryland in 
Baltimore.49 

 III. DISCUSSION50 
 A. Discrimination Claims51 
 Where, as here, there is no direct evidence of discrimination, the Court applies the 
burden-shifting framework established in McDonnell Douglas Corp. v. Green.52 This requires 
that the employee first establish a prima facie case, after which the employer must come forward 
with a legitimate, non-discriminatory reason for the adverse employment decision.53 If the 
employer does so, the employee must then demonstrate that the proffered reason was merely a 
pretext for unlawful discrimination.54 To make a showing of pretext, “the plaintiff must point to 
some evidence, direct or circumstantial, from which a factfinder could reasonably either 
(1) disbelieve the employer’s articulated legitimate reasons, or (2) believe that an invidious 
discriminatory reason was more likely than not a motivating or determinative cause of the 

47 SMF ¶ 37; SMF Ex. 21 [Doc. No. 20-21]. 
48 SMF ¶ 38; J. Pan Dep. Tr. [Doc. No. 20-2] at 178. 
49 SMF ¶ 40; J. Pan Dep. Tr. [Doc. No. 20-2] at 173, 292. 
50 Defendant initially cited as a basis for summary judgment that Plaintiff’s administrative complaint was not timely. 
However, Temple has not set forth any substantive argument in support of this contention, and the Court therefore 
deems it waived. 
51 Claims under Title VII, the PFPO, and the PHRA are all analyzed under the same legal framework. See Szyper v. 
Am. Med. Resp. Mid-Atlantic, Inc., No. 21-2372, 2023 WL 2597585, at *2 (3d Cir. Mar. 22, 2023) (citing Huston v. 
Procter & Gamble Papers Prods. Corp., 568 F. 3d 100, 104 n.2 (3d Cir. 2009)). 
52 See, e.g., Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (citing McDonnell Douglas Corp. v. 
Green, 411 U.S. 792, 802–04 (1973)). 
53 See Smith v. City of Allentown, 589 F.3d 684, 689–690 (3d Cir. 2009). 
54 See McDonnell Douglas, 411 U.S. at 802–03; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 
(2000) (citations omitted). 
employer’s action.”55 
 The burden-shifting framework established in McDonnell Douglas “was never intended 
to be rigid, mechanized or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the 
evidence in light of common experience as it bears on the critical question of discrimination.”56 

 To establish a prima facie case of discrimination under Title VII, Plaintiff must 
demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position; 
(3) she suffered an adverse employment action; and (4) that similarly situated persons outside of 
her protected class were treated more favorably, or that the circumstances otherwise give rise to 
an inference of discrimination.57 
 The first two elements of the prima facie case are uncontested: Plaintiff is a member of a 
protected class, and she was qualified for her position. Temple disputes the third and fourth 
elements, arguing that Dr. Pan did not suffer an adverse employment action and has not 
established that others outside of her protected class were treated more favorably or that 
circumstances otherwise suggest discrimination. 

 Dr. Pan argues that she “suffered an adverse employment action because Temple 
wrongfully reported her probation and remediation to the California Medical Board.”58 Dr. Pan 
further argues that “Temple improperly placed Dr. Pan on remediation” and that she had been 
informed that the probation for twice failing to reach the 20th percentile on the in-service exam 
“was only meant to be an internal program assessment and was not reportable.”59 Temple argues 

55 Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). 
56 Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990) (internal quotation marks and citation omitted). 
57 Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318–19 (3d Cir. 2000) (citation omitted). 
58 Pl.’s Resp. Opp. Summ. J. [Doc. No. 23-2] at 3. 
59 Pl.’s Resp. Opp. Summ. J. [Doc. No. 23-2] at 4. 
that Dr. Pan was on probation, that she knew the probation was a reportable status that had to be 
disclosed to licensing boards and verification agencies, and that Dr. Pan was granted an 
unrestricted medical license in California within three months, an action supported by letters 
from Dr. Patel. Dr. Pan argues that Temple’s actions negatively affected her Stanford fellowship 
and prevented her from beginning her Johns Hopkins fellowship on schedule.60 

 With regard to the fourth factor of the prima facie case, Dr. Pan argues that similarly 
situated male residents were treated more favorably. Specifically, Dr. Pan points to the October 
2017 incident that led to her being placed on remediation while male residents were not subject 
to discipline. Dr. Pan also argues that Temple did not report to the Texas Medical Board that 
D.A. had been placed on remediation or probation, or report to the Florida Medical Board that 
J.M. had been written up for sexual harassment and failed to attend clinical rotations.61 Dr. Pan 
also argues that she was made to wait a year to apply to take the Board exam while D.A. was 
permitted to take it on schedule.62 
 This is a somewhat unusual employment discrimination case, in that the repercussions of 

the alleged discrimination came after Dr. Pan left Temple, and it does not fit neatly into the 
McDonnell Douglas framework.63 Nevertheless, the evidence shows that any adverse 
employment action was not the result of a discriminatory act by Temple. It is undisputed that 
Temple put into place a written policy stating that any student who failed to reach the 20th 

60 Pl.’s Statement of Material Facts ¶¶ 135–39, 143 [Doc. No. 23-4]. 
61 Pl.’s Statement of Material Facts ¶¶ 55, 56, 104, 107–109 [Doc. No. 23-4]. 
62 Pl.’s Statement of Material Facts ¶¶ 120–25 [Doc. No. 23-4]. 
63 The allegations are most akin to a negative employment reference, and although the Court of Appeals has not 
squarely held that a negative reference can constitute an adverse employment action, it has favorably cited such 
decisions. See E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 754 n.4 (3d Cir. 1997) (citing Hashimoto v. Dalton, 118 
F.3d 671, 673 (9th Cir. 1997) for the proposition that “[t]here is little question that the dissemination of adverse 
employment references can constitute a violation of Title VII if motivated by discriminatory intent.”)). 
percentile on the in-service exam two years in a row would be placed on academic probation and 
that such probation was a reportable status. It is undisputed that Dr. Pan was placed on academic 
probation for this reason. It is undisputed that Temple’s FSCV form accurately reported this 
academic probation. It is undisputed that Plaintiff did not report to the California Medical Board 
that she had been placed on academic probation.64 The record unambiguously shows that the 

reason for the delay in Dr. Pan receiving an unrestricted medical license in California was 
because Dr. Pan did not report that she was on probation. Whether or not the remediation was a 
reportable status is a red herring; the inquiries from the California Medical Board did not 
mention remediation and instead sought an explanation as to why Dr. Pan had not reported her 
probationary status. 
 In addition, Dr. Pan has not shown that the remediation or the PIP otherwise constituted 
an adverse employment action. The Court of Appeals for the Third Circuit has held that 
placement on a PIP does not qualify as an adverse employment action unless there is evidence 
that it is “accompanied by an adverse change in the conditions of . . . employment.”65 

 Even if Temple’s policy concerning the in-service exam scores were unwise or contrary 
to other schools’ policies, “it is not enough for a plaintiff to show that the employer’s decision 
was wrong or mistaken, because the issue is whether the employer acted with discriminatory 
animus.”66 Dr. Pan has not produced evidence from which a reasonable factfinder could 
conclude that Temple acted with such animus or that similarly situated male residents were 
treated differently. “[C]omparator employees need not be identical but must be similarly situated 

64 Although Dr. Pan testified in deposition that she was told by Dr. Fox at some time that the probation was an 
internal matter, she also testified that the written policy stated that it was a reportable event. Pan Dep. at 347–48. 
65 Reynolds v. Dep’t of Army, 439 F. App’x 150, 153 (3d Cir. 2011). 
66 Igwe v. E.I. DuPont De Nemours & Co., 180 F. App’x 353, 356 (3d Cir. 2006) (quoting Abramson v. William 
Paterson Coll. of N.J., 260 F.3d 265, 283 (3d Cir.2001)). 
in all material respects. Factors that are relevant include whether the employees dealt with the 
same supervisor, were subject to the same standards, and shared similar job responsibilities.”67 
There is no evidence that any other Temple student failed to obtain the required minimum score 
on the in-service exam in their third year. 

 Dr. Pan argues that Temple did not report that a male resident, D.A., was on probation to 
the Texas Medical Board. However, the evidence shows that the form to which Plaintiff refers 
was submitted before D.A. was placed on probation, and in a form submitted after D.A. had been 
put on probation, Temple reported the probation.68 
 Dr. Pan also argues that Temple refused to let her register for the Boards on schedule in 
October 2019 but permitted D.A. to register even though the in-service exam scores were not yet 
known.69 It is undisputed, however, that D.A. met the cut-off score, and Plaintiff did not. 
 With regard to placement on remediation, Dr. Pan has not shown that the other residents 
were similarly situated to her. The email discussions that preceded the remediation establish that 
there were several incidents where Dr. Wagner and others had concerns with Dr. Pan’s surgical 
performance and with her communication and follow-up.70 With regard to the October incident, 

Dr. Wagner regarded Dr. Pan, as the surgeon, as having the responsibility to follow up on the 
patient.71 Therefore, the covering residents were not similarly situated to Dr. Pan. In addition, 
Dr. Pan has not shown that male residents had similar clinical issues and were not subject to 
remediation.72 

67 Qin v. Vertex, Inc., 100 F.4th 458, 471 (3d Cir. 2024) (quotation marks and citations omitted). 
68 Def.’s Reply Supp. Summ. J. Exs. 3–4 [Doc. No. 26]. 
69 Pl.’s Ex. W [Doc. No. 23-27] at 16. 
70 Def.’s Ex. J [Doc. No. 21-10] at 1. 
71 Def.’s Ex. J [Doc. No. 21-10] at 1. 
72 Plaintiff contends that a male resident, J.M. had allegations of sexual harassment and that he failed to attend his 
clinical rotations, and was not placed on remediation, but the only evidence to support this claim is Plaintiff’s 
 Even if Dr. Pan did establish a prima facie case, summary judgment would be warranted. 
As explained above, Temple has put forth non-discriminatory reasons for its actions, including 
with regard to the information reported to the California Medical Board. A reasonable factfinder 
could credit Temple’s explanations, and therefore the burden shifts back to Plaintiff to 
demonstrate that the “proffered reason is merely pretext for intentional discrimination”73 For the 

reasons previously explained, Dr. Pan has not shown pretext. Although Dr. Pan disagrees with 
Temple’s actions, a reasonable factfinder could not conclude that discrimination likely animated 
Temple’s actions. 
 B. Hostile Work Environment 
 To establish a claim for hostile work environment, Plaintiff must point to facts showing 
that: (1) “[her] workplace was ‘permeated with discriminatory intimidation, ridicule, and insult 
that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an 
abusive working environment;’”74 and (2) the discrimination was “because of” her membership 
in a protected class.75 The Supreme Court has noted in the Title VII context that “offhand 
comments[ ] and isolated incidents (unless extremely serious) will not amount to discriminatory 

changes in the terms and conditions of employment.”76 The Court must “concentrate not on 
individual incidents, but on the overall scenario, when analyzing a hostile work environment 

interrogatory responses, which are answered on information and belief and do not constitute evidence at this stage of 
the litigation. Pl.’s Ex. C [Doc. No. 25]. In addition, Dr. Pan has not established that these alleged issues render J.M. 
similarly situated to her. 
73 Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). 
74 Culler v. Sec’y of U.S. Veterans Affs., 507 F. App’x 246, 249 (3d Cir. 2012) (quoting Nat’l R.R. Passenger Corp. 
v. Morgan, 536 U.S. 101, 116 (2002)). 
75 Culler, 507 F. App’x at 249 (citing Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007)). 
76 Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quotation marks and citation omitted). 
claim.”77 The question is whether the conduct “creates an attitude of prejudice that injects 
hostility and abuse into the working environment.”78 
 Dr. Pan stipulated that she “is not aware of any plastic surgery residents or any Temple 
hospital employees who were discriminated against or harassed because of their sex.”79 Plaintiff 

also stipulated that she “is not aware of any comments made while she worked at Temple 
Hospital about her sex that were in any way negative or hostile” and that “[n]obody at Temple 
Hospital ever related a comment about Plaintiff’s sex to her continued employment in the 
residence program.”80 Dr. Pan presents only hearsay evidence of a single event to which female 
residents were not invited. This incident fails to support a claim of severe or pervasive 
discriminatory conduct to support a claim for hostile work environment. 
 C. Retaliation Claims 
 To establish a prima facie case for retaliation under Title VII and the PHRA, a plaintiff 
must show (1) that she engaged in protected employee activity; (2) that her employer took 
adverse action against her; and (3) a causal connection between her protected activity and her 
employer’s adverse action.81 Protected activity is evidenced by Plaintiff showing that she 

(1) opposed a practice made unlawful by Title VII, (2) filed a charge of discrimination, or 
(3) participated in a charge brought by another.82 

77 Qin, 100 F.4th at 471 (quotation marks and citation omitted). 
78 Id. (citation omitted). 
79 SMF ¶ 41. 
80 SMF ¶¶ 42–43. 
81 Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted). 
82 See 42 U.S.C. § 2000e–3(a). 
 Protected activity may include “informal protests of discriminatory employment 
practices, including making complaints to management.”83 Under the second prong, “the plaintiff 
‘must show that a reasonable employee would have found the challenged action materially 
adverse, which in this context means it well might have dissuaded a reasonable worker from 
making or supporting a charge of discrimination.’”84 Under the third prong, courts “consider ‘a 

broad array of evidence’ in determining whether a sufficient causal link exists [for a plaintiff] to 
survive a motion for summary judgment.”85 A plaintiff may rely on a temporal proximity 
between the protected activity and an employer’s adverse action if it is “unusually suggestive.”86 
“In the absence of such a close temporal proximity, we consider the circumstances as a whole, 
including any intervening antagonism by the employer, inconsistencies in the reasons the 
employer gives for its adverse action, and any other evidence suggesting that the employer had a 
retaliatory animus when taking the adverse action.”87 
 Plaintiff did make a complaint that her placement on remediation was discriminatory, 
which is sufficient under the first prong. The remediation preceded the complaint, and so cannot 

constitute retaliation, and the PIP followed directly from the remediation. This leaves the report 
to the California Medical Board, which occurred in February 2019, seven months after the 
complaint of unfair treatment. Although “there is no bright line rule as to what constitutes unduly 
suggestive temporal proximity,” courts have held that significantly shorter periods than seven 

83 Daniels, 776 F.3d at 193 (quoting Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 
(3d Cir. 2006)). 
84 Daniels, 776 F.3d at 195 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). 
85 LeBoon v. Lancaster Jewish Cmty. Ctr. Ass’n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters 
Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). 
86 LeBoon, 503 F.3d at 232. 
87 Daniels, 776 F.3d at 196 (citations omitted). 
months, without more, cannot defeat summary judgment.88 Dr. Pan argues that “[a]s soon as 
Temple was able to negatively impact Dr. Pan’s career prospects, it did so.”89 But without a 
showing of something more, such as evidence of ongoing antagonism,90 the passage of time is 
too attenuated to support the claim. 

 D. Breach of Contract 
 In order to state a claim for breach of contract under Pennsylvania law, a plaintiff must 
sufficiently allege “(1) the existence of a contract, including its essential terms, (2) a breach of a 
duty imposed by the contract, and (3) resultant damages.”91 Temple extended an offer letter to 
Dr. Pan for the residency, which Dr. Pan signed and returned in accepting the offer.92 
 Dr. Pan argues that Temple wrongly reported her remediation, which did not comply with 
Temple’s policies or the guidelines of the Accreditation Council for Graduate Medical 
Education. However, even if the reporting of the remediation status breached a contract, Dr. Pan 

88 LeBoon, 503 F.3d at 233 (citations omitted) (holding that “a gap of three months between the protected activity 
and the adverse employment action, without more, could not create an inference of causation and defeat summary 
judgment”). 
89 Pl.’s Resp. Opp. Summ. J. [Doc. No. 23-2] at 12. 
90 Jensen v. Potter, 435 F.3d 444, 450 (3d Cir. 2006). Dr. Pan has not produced evidence of antagonism; instead, 
Dr. Patel urged the California Medical Board to grant Dr. Pan an unrestricted license. 
91 McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010) (quoting Hart v. Arnold, 884 A.2d 316, 332 
(Pa. Super. Ct. 2005)). 
92 Plaintiff separately asserts that, in addition to the University’s express promises in the employment agreement, 
Temple violated an implied covenant of good faith and fair dealing. Pennsylvania courts have recognized that parties 
to at least some contracts are bound by an “obligation of good faith,” but any such obligation “is tied specifically to 
and is not separate from the duties a contract imposes on the parties.” Murphy v. Duquesne Univ. of the Holy Ghost, 
777 A.2d 418, 434 n.11 (Pa. 2001). But see Hanaway v. Parkesburg Grp., LP, 168 A.3d 146, 156–58 (Pa. 2017) 
(declining to recognize a wholesale adoption by the Pennsylvania General Assembly of Section 205 of the 
Restatement (Second) of Contracts). 
Because the implied covenant “functions ‘as an interpretive tool’ to aid the court in evaluating breach of contract 
claims” rather than providing a standalone cause of action, Tuno v. NWC Warranty Corp., 552 F. App’x 140, 144 
(3d Cir. 2014) (quoting Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000)), this 
Court need not “separately consider any claim for breach of the duty of good faith and fair dealing[.]” Trs. of the 
Univ. of Pa., 270 F. Supp. 3d at 815 n.8. The Court will, however, take into consideration whether Temple’s actions 
comport with its duty to fulfill its contractual duties in good faith. 
cannot show that she suffered damages from the breach, because as explained above, the 
evidence shows that the reporting of the remediation status caused no harm. 
 In the alternative, even if Dr. Pan could show that Temple breached a contract and that 
damages resulted, Dr. Pan expressly agreed to extend immunity to Temple in connection with 

reports to medical boards. The offer letter dated May 19, 2016 provided in relevant part: 
 Release of Information: The Hospital frequently receives requests and inquiries 
 from you and others, including in part, hospital medical staff offices, medical 
 licensure boards, other residency/fellowship programs, clinical rotation sites, and 
 employers related to your admission, participation in, and dismissal from its 
 residency program, and your criminal history and child abuse clearances. The 
 paragraph below authorizes the Hospital to respond to these requests. 
 You agree to extend absolute immunity to, and release from any and all 
 liability, the Hospital and its affiliates, their respective, employees, officers, 
 directors, medical staff, agents, and any third parties for any actions, 
 recommendations, reports, statements, communications, or disclosures, whether 
 oral, written or otherwise, involving you and/or related to your admission, 
 participation in, and dismissal from the Hospital’s residency program. This 
 includes, without limitation, matters, inquiries, or letters of reference concerning 
 your professional qualifications, credentials, medical knowledge, clinical 
 competence, character, mental or emotional stability, physical condition, criminal 
 history and child abuse background clearances, ethics or behavior and any other 
 matter that might directly or indirectly have any effect on, or related to, your 
 abilities, education, competence, patient care, participation in another residency 
 program, skills, or the orderly operation of any residency program, educational 
 program, hospital or healthcare facility. This authorization includes the right for 
 the Hospital and its affiliates, and their respective employees, officers, medical 
 staff, directors, and agents to permit the inspection, provision, or disclosure of any 
 documents, recommendations, reports, statements, or disclosures relating to the 
 above. You also expressly authorize the Hospital to release this information to 
 any third parties and its employees, officers, medical staff, directors and agents 
 upon request.93 
 Plaintiff argues that the clause is unconscionable. “To invalidate or bar enforcement of a 
contract based on unconscionability, the party challenging the contract must show both an 
absence of meaningful choice, also referred to as procedural unconscionability, and contract 

93 Def.’s Ex. G [Doc. No. 21-7] at 2. 
terms that are unreasonably favorable to the other party, known as substantive 
unconscionability.”94 
 Dr. Pan argues that she had no choice but to accept the terms in order to enter into the 
residency program. Accepting this as true, that constitutes only procedural unconscionability. 

Plaintiff has not shown that the provision is substantively unconscionable. The provision is 
limited to the release of information required by (as relevant here) medical licensing boards, and 
it has been held to bar claims even of defamatory release of information.95 Summary judgment 
will be granted on the contract claim. 
 IV. CONCLUSION 
 For the reasons stated above, Defendant’s motion for summary judgment will be granted. 
An order will be entered. 

94 Kohlman v. Grane Healthcare Co., 279 A.3d 42, 48 (Pa. Super. Ct. 2022). 
95 Mandalapu v. Temple Univ. Hosp., Inc., No. CV 15-5977, 2018 WL 3328026, at *15 (E.D. Pa. July 5, 2018), aff’d 
sub nom. Mandalapu v. Temple Univ. Hosp., 786 F. App’x 348 (3d Cir. 2019).