J-A05001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NORMA BAUGHMAN AND ROBERT L. BAUGHMAN, SR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT L. BAUGHMAN, JR. | : | |
| Appellant | : | No. 766 WDA 2024 |

Appeal from the Judgment Entered August 8, 2024
In the Court of Common Pleas of Crawford County Civil Division at No(s):
AD 2023-121

BEFORE:  MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                **FILED: March 21, 2025**

Robert L. Baughman, Jr. (Appellant), appeals from the judgment entered against him, and in favor of his parents, plaintiffs Norma Baughman (Norma) and Robert L. Baughman, Sr. (Robert) (collectively, the Baughmans), in this landlord-tenant dispute.  After careful consideration, we affirm.

The trial court issued the following findings of fact regarding the underlying dispute:

[The Baughmans] are the parents of [Appellant].  On July 11, 1996, the parties [executed] a written [l]ease [(the written lease)] for [Appellant] to lease one acre [(the home parcel)] of the [the Baughmans'] 330 acres of farmland [(the farm), located in Townville, Pennsylvania,] in exchange for either his labor on the farm or his payment of $400 per month.  [Appellant] was given

---

[*] Retired Senior Judge assigned to the Superior Court.

the opportunity to retain legal counsel before signing the [written l]ease[,] but he did not.

While working on the farm, [Appellant] installed a modular home [(the modular home)] on the [home parcel].  He also installed a pole building and a grain bin.  [Appellant] worked on the farm until 2000.  Although he [had] stopped working [in 2000], [Appellant] did not pay rent from 2000-2009.  During this time, [the Baughmans] excused [Appellant] from paying rent and [Appellant] performed various chores on the farm.

In 2009, the parties entered into an "oral agreement" [(the oral lease)] whereby [Appellant] leased 254 acres [(the farm parcel)] from [the Baughmans] in exchange for [Appellant's] payment of $2,100 per month[,] which [Appellant] paid from 2009-2018.  [Appellant ceased] paying rent in 2018.  [The Baughmans] asked [Appellant] to resume the $400 per month payments [for the home parcel].  [Appellant] has not paid and remains on the [home parcel] ….

Trial Court Findings of Fact, 5/30/24, at 1-2 (paragraph designations omitted; formatting modified).

On March 20, 2023, the Baughmans filed a civil complaint against Appellant for breach of lease and for Appellant's eviction from the home and farm parcels.  Complaint, 3/20/23, ¶ 17, prayer for relief.  Appellant filed an answer, new matter, and counterclaim on April 10, 2023.  In part, Appellant averred that he and his former wife had purchased the modular home in reliance on the Baughmans' assurances that they could place a home on the home parcel. Answer, 5/10/23, ¶ 23.  Appellant stated that when the modular home was delivered, the Baughmans demanded that he sign a lease agreement regarding the home parcel before placing the modular home.  *Id.* ¶ 26.  Appellant admitted he signed the written lease.  *Id.* ¶ 27.  Appellant

averred that the written lease was unconscionable and unreasonable, and only signed under duress. *Id.* ¶ 28.

In accordance with the written lease, Appellant worked at the farm until December 2001. *Id.* ¶ 29. Thereafter, Appellant averred, the Baughmans did not demand rent for the home parcel, "because [Appellant] performed other chores on the premises." *Id.* ¶ 30. Appellant and his wife separated in April 2014, and divorced in March 2018. *Id.* ¶¶ 31, 33. According to Appellant, the Baughmans represented that they would transfer the home parcel to Appellant, after the divorce was finalized. *Id.* ¶ 32. However, in 2018, Appellant "heard that [the Baughmans] … wanted to sell the[] farm to an individual named Matthew Petersheim (Petersheim). Shortly thereafter, Appellant averred, the Baughmans threatened to evict him from the home parcel. *Id.* ¶ 37.

In new matter, Appellant asserted, in part, that the Baughmans' claims are barred "by actions of [the Baughmans] which constituted their consent to his alleged breach of the agreement." *Id.* ¶ 44. Appellant counterclaimed for his excess payments to the Baughmans, as well as for the Baughmans' unjust enrichment. *See id.* ¶¶ 50-60. Appellant additionally sought a declaratory judgment conveying the home parcel to him, based on his reliance on the Baughmans' representations, his payments to the Baughmans, and his improvements to the home parcel. *Id.* ¶¶ 62-66. The Baughmans filed a

reply to new matter and an answer to Appellant's counterclaim on May 1, 2023.

The matter proceeded to a non-jury trial on May 9, 2024. At the close of trial, the trial court determined that Appellant had breached both the written and oral leases by his failure to pay rent since 2018. Trial Court's Conclusions of Law, 5/30/24, ¶ 1. The trial court further concluded the written lease was not unconscionable, specifically deeming Appellant's version of the circumstances leading to its signing incredible. *Id.* ¶ 2. The trial court concluded there was no "accord and satisfaction," but the Baughmans were unjustly enriched for Appellant's improvements on the property, in the amount of $298,200. *Id.* ¶ 4. Finally, the trial court concluded there was no *inter vivos* gift of the home parcel to Appellant. *Id.* ¶ 6.

That same day, the trial court (a) entered an order evicting Appellant from the home parcel and farm parcel, and requiring him to remove all personal property within 90 days; (b) entered judgment on Appellant's unjust enrichment counterclaim against the Baughmans for $298,200.00; and (c) denied and dismissed Appellant's counterclaim asserting an *inter vivos* gift of any property to Appellant. Trial Court Order, 5/30/24, at 1. Appellant filed post-trial motions, which the trial court denied on June 13, 2024. On June 24, 2024, Appellant appealed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

Appellant untimely filed his concise statement, after which the trial court filed an opinion.

Initially, we address whether this Court has jurisdiction over Appellant's appeal. As stated above, the trial court's order simultaneously announced its verdict and entered a monetary judgment. This Court has recognized that a judgment entered simultaneously with the verdict is premature and therefore void. ***Jenkins v. Robertson***, 277 A.3d 1196, 1198 (Pa. Super. 2022). However, our review further discloses that after entering its "judgment," the trial court entertained and resolved Appellant's post-trial motions. The trial court entered no judgment following its denial of post-trial motions.

This Court could deem Appellant's appeal, following the denial of post-trial motions, premature. ***See Johnston the Florist v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (recognizing that an appeal lies from the entry of judgment and not an order denying a post-trial motion). However, upon the direction of this Court and the praecipe of Appellant, the trial court entered judgment on August 8, 2024. Because a final judgment has been entered, the appeal is properly before us for disposition. ***See*** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a final determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.")

Appellant presents the following issues for our review:

1.     DID THE LOWER COURT COMMIT ERRORS OF LAW OR ABUSE DISCRETION IN FINDING THE [WRITTEN] LEASE AGREEMENT CONSCIONABLE?

2.     DID THE LOWER COURT COMMIT AN ERROR OF LAW OR ABUSE DISCRETION IN FINDING THE LEASE AGREEMENT ENFORCEABLE?

3.     DID THE LOWER COURT COMMIT AN ERROR OF LAW OR ABUSE DISCRETION IN FAILING TO FIND THAT THE PARTIES ENTERED A SUBSEQUENT LEASE AGREEMENT, RENDERING THE PRIOR AGREEMENT VOID?

4.     DID THE LOWER COURT COMMIT AN ERROR OF LAW OR ABUSE DISCRETION IN FAILING TO FIND AN INTER VIVOS GIFT OF THE PROPERTY HAD BEEN MADE?

5.     DID THE LOWER COURT COMMIT AN ERROR OF LAW OR ABUSE DISCRETION IN FAILING TO GRANT APPELLANT HIS REQUESTED RELIEF?

Appellant's Brief at 2.

Before addressing the substantive issues raised by Appellant, we first address whether Appellant preserved his issues for appellate review. On June 25, 2024, the trial court ordered Appellant to file a concise statement of matters complained of on appeal within 21 days. Order, 6/25/24. Appellant untimely filed his concise statement on August 1, 2024. Ordinarily, an untimely-filed concise statement results in waiver of all issues for appellate review. *J.P. v. S.P.*, 991 A.2d 904, 908 (Pa. Super. 2010).

> in determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925[(b)], it is the trial court's order that triggers an appellant's obligation under the rule[] and, therefore, we look first to the language of that order.

***Berg v. Nationwide Mut. Ins. Co., Inc.***, 6 A.3d 1002, 1007-08 (Pa. 2010) (plurality). We will not deem an appellant's issues waived where the trial court's Rule 1925(b) order is deficient. ***Rahn v. Consol. Rail Corp.***, 254 A.3d 738, 745 (Pa. Super. 2021).

Rule 1925(b)(3)(iv) requires the trial court's order to include language advising the appellant "that any issue not properly included in the [Rule 1925(b)] Statement … shall be deemed waived." Pa.R.A.P. 1925(b)(3)(iv). Instantly, the trial court's order did not include such language. ***See*** Order, 6/25/24. Because the trial court's order did not comport with Pa.R.A.P. 1925(b)(3)(iv), we decline to quash the appeal. ***See Berg***, 6 A.3d at 1011 (finding it inequitable to deem issues waived due to an untimely-filed concise statement, where the trial court's order does not comport with Pa.R.A.P. 1925(b)).

> We apply the following standard of review to a nonjury verdict:
>
> Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

The trial court, as the finder of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.*, 181 A.3d 1188, 1191-92 (Pa. Super. 2018) (citations and quotation marks omitted).

In his first issue, Appellant claims the trial court erred by not declaring the written lease agreement unconscionable. Appellant's Brief at 9. Appellant recites various terms of the written lease, which, he claims, are unconscionable. Appellant argues that the circumstances surrounding the execution of the written lease "show signs of procedural unconscionability." *Id.* at 10. According to Appellant, the parties had negotiated a 99-year lease, charging one dollar ($1.00) per year "for the purpose of [Appellant] working on the farm." *Id.* Appellant contends that the Baughmans presented him with the written lease only one day before the modular home was to be placed on its foundation. *Id.* Appellant maintains he first saw the written lease at the office of the Baughmans' counsel. *Id.* With no citation to legal authorities, Appellant argues that this constitutes procedural unconscionability. *See id.*

Appellant also argues that the written lease is substantively unconscionable, as it included 26 articles and spanned 16 pages. *Id.* Appellant claims that the lease term is for 99 years, at 400 dollars ($400.00) per month, and subject to a 15% increase in price each year without Appellant's consent. *Id.* at 10-11. Further, the written lease shifted all costs

of the home parcel to Appellant except for electricity and trash collection. **Id.** at 11. Appellant points out the written lease permits the acceleration of rent for the entire lease if he makes a late payment of rent. **Id.**

Appellant also directs our attention to provisions allowing the Baughmans to change any rules related to maintenance and use of the home parcel at any time, without Appellant's consent. **Id.** The written lease additionally included a confession of judgment clause that, Appellant argues, failed to meet legal standards. **Id.** at 12. Appellant argues that, because of the high degree of substantive unconscionability, the entire agreement should be deemed void and not a proper basis for eviction. **Id.** at 14. Appellant cites no caselaw or legal authority supporting his claims of unconscionability.[1]

Initially, we deem Appellant's claim moot, as the trial court found Appellant breached both the written lease **and** the subsequent oral lease.

> The mootness doctrine requires that there is an actual case or controversy at all stages of review. [A]n issue may become moot during the pendency of an appeal due to an intervening change in the facts of the case[.] An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

**Selective Way Ins. Co. v. Hosp. Grp. Servs.**, 119 A.3d 1035, 1040 (Pa. Super. 2015) (*en banc*) (internal citations and quotation marks omitted).

---

[1] This Court has declined to reach the merits of an issue where "the argument section of [the a]ppellant's brief merely consists of general statements unsupported by any discussion and analysis of relevant legal authority." **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014).

Here, the trial court determined that the parties entered into the oral lease in 2009, and that Appellant ceased paying rent under the oral lease in 2018. *See* Trial Court Findings of Fact, 5/30/24, ¶¶ 4-5. Even if we deemed the written lease unconscionable, Appellant remained in breach of the oral lease. Consequently, any issue regarding the unconscionability of the written lease is moot.

Even if this issue was not moot, we would conclude that it lacks merit. A lease is a contract and must be interpreted according to the principles of contract law. *Stein Revocable Trust v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000). "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). "The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself." *Id.* Further, we "do not assume that a contract's language was chosen carelessly, nor do [we] assume that the parties were ignorant of the meaning of the language they employed." *Id.*

To invalidate or bar enforcement of a contract based on unconscionability,

> the party challenging the contract must show **both** an absence of meaningful choice, also referred to as procedural unconscionability, and contract terms that are unreasonably favorable to the other party, known as substantive unconscionability. Procedural and substantive unconscionability are assessed under a sliding-scale approach, with a lesser degree

- 10 -

of substantive unconscionability required where the procedural unconscionability is very high.

***Kohlman v. Grane Healthcare Co.***, 279 A.3d 42, 48 (Pa. Super. 2022) (citations omitted; emphasis added). Whether a contract is unconscionable is a question of law, but can turn on factual determinations. ***Id.*** at 47. Our standard of review is *de novo*, and our scope of review is plenary. ***Id.***

The trial court found that Appellant was offered and declined an opportunity to retain legal counsel before signing the written lease. Trial Court Findings of Fact, 5/30/24, ¶ 2. The trial court deemed incredible Appellant's statement that he did not have the option to see the written lease before signing it. Trial Court Conclusions of Law, 5/30/24, ¶ 2. The trial court concluded the written lease was not unconscionable. ***Id.*** Our review confirms the trial court's findings and conclusions.

At trial, Norma testified that she and her husband, Robert, purchased their property in 1966 and farmed the property for many years. N.T., 5/9/24, at 10-11. They "had a total of around 300 head of cattle," but had not grown crops. ***Id.*** at 12.

Norma stated around July 1996, she and Robert negotiated with Appellant and his then-wife, Jennifer Baughman (Jennifer) regarding their intention to lease the home parcel. ***Id.*** at 11. The Baughmans retained counsel, who drafted the 1996 written lease. ***Id.*** at 13. Norma confirmed the written lease contained the terms and conditions of Appellant and Jennifer's agreement with the Baughmans. ***Id.*** Norma testified that she gave Appellant

- 11 -

several opportunities to review the written lease, but "it was put off and put off." *Id.* at 366. The trial court deemed Norma credible. Trial Court Opinion, 8/6/24, at 2.

Appellant testified that he has lived on the Baughman's property "virtually all my life." N.T., 5/9/24, at 63. Appellant testified that after his marriage in 1991, the Baughmans

> gave us permission to step up and set a double wide to do a modular [home] with a basement. And there was talks that it would be just a simple 99 year lease, a dollar a year just to make it binding. It would be waived as long as I lived and worked on the farm …. Not live on it, but work on it. And a small monthly payment if something happened, I became disabled and couldn't work on the farm. Other than that, it was supposed to be a simple lease.
>
> … We ordered the [modular home]. Waited. The [modular home] was delivered …, sitting across the road in two pieces. The basement was put on. And my wife got a phone call one evening and said, you guys have to be at [the Baughmans' attorney's] office here in Meadville to sign that lease agreement before the set crew comes to put [the modular home] on the foundation.
>
> ….
>
> … When we got [to the attorney's office], it was this agreement, 16 pages, instead of a simple lease agreement. And I can still remember how that went down. We never had the option to see that lease beforehand until we got there. **We were offered … to be able to have legal advice or whatever if we chose to.** We were still somewhat young at the time. Had all our money tied up in the [modular home] and the basement and we were planning on staying on the farm and dairy farming. We were figuring on taking over the dairy farm at the time.
>
> … We started reading through the agreement. And when [Jennifer] got pas[t] the second page, she turned and looked at me and said, this is a bunch of BS. They're not going to live forever. We're not … and so we basically sucked it up and signed

- 12 -

the lease because … we had a house sitting there and basement sitting there.

*Id.* at 65-67.

The trial court rejected Appellant's claim of procedural unconscionability:

> [Appellant] claims he felt pressure[d] to sign because [the modular] home was about to be delivered[,] but testified that the [modular] home had been sitting across the street for three and a half weeks (N.T.[, 5/9/24, at] 67), a time period when he had the option to seek counsel and review the lease. From both [Appellant's] admissions and [Norma's] credible testimony, we concluded that [Appellant] was avoiding signing the lease. *See* [*id.* at] 37. He had the opportunity to get counsel and the opportunity to review the [written lease], but he made the conscious decision not to review it or seek counsel. [*See id.*]
>
> ….
>
> This was a bargained-for exchange about the rental arrangement and [Appellant] was not in any compromised or weakened position. … [Appellant] was healthy and informed but still chose not to get legal advice and ultimately signed the lease with full appreciation of its meaning.

Trial Court Opinion, 5/30/24, at 2-3 (citations reformatted). The trial court's findings are supported in the record, and its legal conclusion is sound. *See id.*

Our review confirms Appellant failed to establish that he lacked a "meaningful choice" as to whether to execute the written lease. Appellant's own testimony established he was afforded an opportunity to "have legal advice or whatever if we chose to." N.T., 5/9/24, at 66. Appellant declined to do so. Under these circumstances, we conclude Appellant failed to establish

- 13 -

any procedural unconscionability in executing the written lease. *See Kohlman*, 279 A.3d at 48 (requiring the party to prove **both** an absence of meaningful choice and contract terms that unreasonably favor the opposing party). Because Appellant failed to establish **any** procedural unconscionability, his first issue fails. *See id.*

To the extent that Appellant argues that any procedural unconscionability in executing the written lease inures to the oral lease, the record is clear that the two agreements were separate leases. The written lease pertained to the one-acre home parcel. *See* N.T., 5/9/24, at 18 (wherein Norma testified the written lease was for the home parcel, comprised of one acre). The oral lease, entered into years later, pertained to the farm parcel. *Id.* at 19.

Norma explained that in 2009, she and Robert considered selling the farm. *Id.* at 19. According to Norma,

> we were going to sell the farm and [Appellant] came to us and said that he would like to … crop farm, which was totally different for us and he begged us not to sell the farm. So we didn't and we agreed and entered into an agreement with him to crop farm.

*Id.* at 18-19. The oral lease pertained to the 254 acres comprising the farm parcel, which included the one-acre home parcel. *Id.* at 19. Norma explained that Appellant was to pay $2,100.00 per month, which included the $400.00 per month "for his house rent." *Id.*

As found by the trial court, Appellant subsequently paid the Baughmans $2,100.00 per month from 2009-2018, as required by the oral lease. Trial

Court Findings of Fact, 5/30/24, ¶ 5. Norma testified that Appellant grew crops on the farm parcel the first year, but was uncertain about whether he farmed crops in 2019. *Id.* at 20. According to Norma, when Appellant started his trucking business, he stopped paying $2,100.00 per month. *Id.* When the Baughmans mentioned this to Appellant, "he was very nasty and informed us he was not doing it." *Id.* According to Norma,

> [Appellant's] big thing was he always said that we lived long enough and we should be dead and pushing up flowers and he didn't feel he needed to do those things.

*Id.* at 21. Appellant alleges no procedural unconscionability as to the oral lease. As such, his claim of unconscionability fails as to the oral lease as well. *See Kohlman*, 279 A.3d at 48. Appellant's first issue merits no relief.

In his second issue, Appellant argues the trial court erred in not deeming the Baughmans' lawsuit barred by the doctrine of promissory estoppel. Appellant's Brief at 15. According to Appellant, the Baughmans failed to enforce the lease agreement for years, thereby consenting to Appellant's breach. *Id.* at 14. Appellant asserts that he relied on the Baughmans' promise that he could live the home parcel and be subject only to a "simple" lease agreement. *Id.* at 15. Appellant claims that, relying on this promise, he "began construction, including transporting the [modular] home, hiring contractors, and setting the foundation for the [modular home]." *Id.* at 16. Appellant again claims that when he was given the written lease agreement

- 15 -

to review, he was enticed by the Baughmans' promise and placed at a disadvantage because of that promise. *Id.*

Appellant further argues that the Baughmans "impliedly promised that they would not enforce the [written] lease and prior to this action, [the Baughmans] did nothing to enforce their rights" under the written lease. *Id.* Appellant argues that, because the Baughmans "sat on their right to pursue action, they impliedly waived enforcement of the [l]ease [a]greement entirely." *Id.*

Appellant asserts that in entering into the oral lease, "one or both [of the Baughmans] promised to [Appellant] **that they would convey the property to him**." *Id.* at 17 (emphasis added). Appellant argues that the entry of a new agreement and promise of future ownership led Appellant not to expect enforcement of the 1996 lease agreement. *Id.* Appellant claims he erected buildings and improved the home parcel, paid taxes and life insurance premiums, and paid other costs at the request of the Baughmans. *Id.* According to Appellant, these investments "cannot be undone," and the Baughmans' failure to previously enforce their rights caused him economic harm. *Id.*

Rule of Appellate Procedure 2119(a) requires that each distinct issue in the argument section of a brief contain such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "This Court will not act as counsel and will not develop arguments on behalf of an appellant."

*9795 Perry Highway Mgmt., LLC v. Bernard*, 273 A.3d 1098, 1103 (Pa. Super. 2022). As Appellant failed to develop this argument, we deem it waived. Nevertheless, we will address Appellant's argument.

The doctrine of promissory estoppel makes otherwise unenforceable agreements binding in the absence of a valid contract or consideration. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). To establish a promissory estoppel cause of action, a party must prove three elements:

> (1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.

*Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. 1997) (citations omitted). A "promise" in this context has been described as "misleading words, conduct or silence by the party against whom the estoppel is asserted[.]" *Rinehimer v. Luzerne Cty. Comm. Col.*, 539 A.2d 1298, 1306 (Pa. Super. 1988) (citation omitted).

Here, it appears that Appellant seeks to enforce the purported agreement to convey the home parcel and/or farm parcel through promissory estoppel. However, "the statute of frauds directs that agreements for the sale of real estate shall not be enforced unless they are in writing and signed by the seller." *Hostetter v. Hoover*, 547 A.2d 1247, 1250 (Pa. Super. 1988) (footnote omitted). "As a general rule, the effect of the statute is to render

oral contracts for the sale of real estate unenforceable, although not invalid."[2] *Id.*

Contrary to Appellant's assertions, the record does not support Appellant's claim of detrimental reliance based on the Baughmans' failure to enforce the written lease. At trial, Norma testified that she attempted to collect rent payments from Appellant:

> We spoke to [Appellant] different times about paying the rent and … right around that same time, [Robert] had health issues. He went into cardiac arrest. He had a stroke. We went through four years of bad health with him. And we did ask [Appellant] at different times about paying rent and he would get nasty with us. … I just had so much going on and my husband was not able, mentally or physically, to go into pursuing [Appellant].

N.T., 5/9/24, at 45.

_____

[2] "A party who would otherwise have a claim in restitution under a contract is not barred from restitution for the reason that the contract is unenforceable by him because of the Statute of Frauds …." *Wilson v. Parker*, 227 A.3d 343, 354 (Pa. Super. 2020) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 375)). As the RESTATEMENT makes clear, returning the value of the improvements vindicates the statute of frauds by fully rescinding any unenforceable, oral contract to sell the farm parcel. Comment (a.) to Section 375 explains:

> *a. Restitution generally available*. Parties to a contract that is unenforceable under the Statute of Frauds frequently act in reliance on it before discovering that it is unenforceable. A party may, for example … make improvements on land that is the subject of the contract. The rule stated in this Section allows restitution in such cases.

*Id.* § (a) cmt.

Further, Appellant testified that before the Baughmans terminated his oral lease, he entered into a verbal agreement with Petersheim. N.T., 5/9/24, at 83. Under this agreement, Petersheim would purchase the Baughmans' property, and lease the farm parcel to Appellant. *Id.* Appellant's testimony confirms his own belief the oral lease agreement provided him with no continuing right to remain indefinitely on the property. As such, Appellant's second issue, claiming promissory estoppel bars the instant action, fails.

In his third issue, Appellant claims the 2009 oral lease replaced the parties' 1996 written lease agreement. Appellant's Brief at 18. Appellant argues that his breach or abandonment of the oral lease did not permit revival of the written lease. *Id.* Appellant claims that under the terms of the written lease, he was required to pay $400.00 per month after he terminated his farm business in 2001. *Id.* at 18. Appellant points out that the Baughmans did not request this amount, because Appellant performed other work on the property. *Id.* According to Appellant, he satisfied the written lease by performing other acts. *Id.* Appellant argues that his labor constituted an accord and satisfaction of the prior lease agreement. *Id.*

Appellant acknowledges that in the 2009 oral lease, Appellant leased not only the home parcel, but also the farm parcel. *Id.* at 19. Appellant points out he paid the Baughmans $189,000.00 (90 months' payments) over nine years. *Id.* He posits that, if the prior lease had remained in effect, Appellant would have been expected to pay only $144,000.00. *Id.* Appellant

argues that both parties benefitted from the oral modification. ***Id.*** at 19-20. Appellant asserts that either the Baughmans waived the debt owed under the first lease agreement, or they permitted the oral agreement to satisfy the debt for the prior agreement. ***Id.*** at 20.

We are at a loss to understand Appellant's claim. In its opinion, the trial court explained that it awarded Appellant damages for his unjust enrichment claim. Trial Court Opinion, 8/6/24, at 3. The trial court did not award the Baughmans damages or back rent, nor did it deduct any alleged debt from Appellant's unjust enrichment award. We find no basis upon which to grant Appellant relief for his third issue.

In his fourth issue, Appellant argues that the Baughmans made an *inter vivos* gift of the home parcel to him. Appellant's Brief at 20. Appellant requested a declaratory judgment stating that the Baughmans had gifted the property to him. ***Id.*** Appellant argues that at trial, he testified that the Baughmans "expressly indicated that he would own the real estate and buildings on his [p]roperty." ***Id.*** According to Appellant,

> [t]his express indication evidences donative intent. The fact that the parties are parents and child, between whom unenforced agreement(s) exist[,] supports finding that no other intent for this property was present. [Appellant's] acts in erecting buildings on the property, performing maintenance, and making payments on the property validate delivery and his acceptance of the gift. While preparing to give him the property, [the Baughmans] leased to [Appellant] additional land for the purpose of grain farming, assenting to [Appellant's] continued dominion over the property….

*Id.* at 21 (capitalization modified). Appellant claims that these facts established the Baughmans' donative intent. *Id.* Further, Appellant points out the Baughmans delivered and Appellant accepted the property. *Id.* Thus, Appellant claims he established a valid *inter vivos* gift. *Id.*

Generally, agreements for the sale of real estate are only enforceable if they are in writing and signed by the seller. *Hostetter v. Hoover*, 547 A.2d 1247, 1250 (Pa. Super. 1988); *see also* 33 P.S. § 1 (Statute of Frauds). A valid *inter vivos* gift of real estate has two components: "(1) a donative intent upon the part of the grantor[,] and (2) a delivery of the deed to the grantee, either actual or constructive, which divested the donor of all dominion over the property and invested the donee therewith." *In re Padezanin*, 937 A.2d 475, 480 (Pa. Super. 2007) (citations, brackets, and quotation marks omitted).

> Donative intent can be inferred from the relationship between the donor and donee. Our Supreme Court [has provided that,] "[a]s between parties so related [*i.e.*, parent to children], if it appears that there was a voluntary delivery without explanatory words and a retention by the transferee, it can be assumed that there was an intention to give.

*Estate of Korn*, 480 A.2d 1233, 1237 (Pa. Super. 1984) (citation omitted).

However, a "parol" *inter vivos* gift of an interest, in whole or in part, of real estate may be valid where such gift is "followed not only by a change in possession, but by the making of such permanent improvements on the property as could not be compensated in damages." *In re Yarnall's Estate*, 103 A.2d 753, 757 (Pa. 1954). In order to establish a valid parol gift of land,

a party must (1) present direct, positive, express, and unambiguous evidence; (2) take possession of the land "at the time or immediately after the gift is made, **and such possession must be exclusive, open, notorious, adverse, and continuous**[;]" and (3) "the donee must make valuable improvements on the property for which compensation in damages would be inadequate." *Fuisz v. Fuisz*, 591 A.2d 1047, 1049 (Pa. 1991) (emphasis added).

Here, Appellant failed to present direct, positive, express and unambiguous evidence of an *inter vivos* gift. As the trial court explained,

> [Appellant] adduced no evidence that [the Baughmans] ever had the requisite donative intent to make an *inter vivos* gift. In fact, the word "gift" was never spoken during trial. N.T. and N.T. Key Word Index, p. 5. To the contrary, Norma [] credibly testified that [the Baughmans] intended to sell the property and use the proceeds for their retirement. N.T., [5/9/24, at] 23.

Trial Court Opinion, 8/6/24, at 3.

Appellant further failed to establish his "exclusive, open, notorious, adverse, and continuous" possession of the property. *Fuisz*, 591 A.2d at 1049. As found by the trial court, Appellant paid the Baughmans $2,100.00 per month from 2009-2018, as required by the oral lease. Trial Court Findings of Fact, 5/30/24, ¶ 5. Norma testified at trial that under the oral lease, Appellant was to pay $2,100.00 per month, which included the $400.00 per month "for his house rent." N.T., 5/9/24, at 19. Thus, the record supports the trial court's conclusion that the Baughmans did not make an *inter vivos*

gift of the home parcel and/or farm parcel to Appellant. ***See id.***; ***see also Padezanin***, 937 A.2d at 480. Appellant's fourth issue merits no relief.

In his fifth issue, Appellant claims he is owed additional relief. Appellant's Brief at 21. Appellant claims that the Baughmans knew he was constructing buildings on the home parcel. ***Id.*** at 22. Further, Appellant asserts that the Baughmans contracted for the right of first refusal to purchase Appellant's modular home under Article 10.1 of the written lease. ***Id.*** Regardless of whether the Baughmans agreed to gift him the property, Appellant argues that he incurred additional expenses totaling $324,240.00, which included life insurance premiums benefitting the Baughmans, electric bills, sewer bills and a dumpster. ***Id.*** at 23. Appellant points out that the Baughmans admitted they received most of these "benefits." ***Id.*** Appellant directs our attention to the testimony of Petersheim, who testified that he intended to pay Appellant $280,000.00 for the buildings. ***Id.*** at 23-24. Appellant argues the trial court's award of $298,200.00 is far less than his actual damages, as it was limited solely to the value of the buildings. ***Id.*** at 24.

Appellant further points out that it will take him in excess of one year to move his equipment from the property. ***Id.*** In addition, he will likely need to specially construct a building to house this equipment. ***Id.*** He argues that the trial court's grant of only 90 days to remove his equipment causes him undue hardship. ***Id.***

To prevail on an unjust enrichment claim, which is an equitable doctrine, the plaintiff must demonstrate the following elements:

> [W]e have described [the elements for unjust enrichment] as [(1)] benefits conferred on defendant by plaintiff, [(2)] appreciation of such benefits by defendant, and [(3)] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. … The critical inquiry in the application of this doctrine is whether a defendant has been unjustly enriched. Where unjust enrichment is found, the law implies a contract, referred to as either a *quasi contract* or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred.

***Karden Construction Services, Inc. v. D'Amico***, 219 A.3d 619, 628 (Pa. Super. 2019). Thus, "where one party has been unjustly enriched at the expense of another, he is required to make restitution to the other. In order to recover, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied...." ***Meehan v. Cheltenham Twp.***, 189 A.2d 593, 595-96 (Pa. 1963).

The trial court addressed and rejected Appellant's claim:

> [The court] found it equitable to award [Appellant] the value of the [modular] home and grain bin. Based on stipulations of value entered into the record at trial, [the court] awarded [Appellant] $208,200 for the buildings and $90,000 for the grain bin. [The Baughmans] would be unjustly enriched if [Appellant] were not compensated for these. The [c]ourt was well within its discretion to award this amount of compensation without including the expenses [Appellant] claimed to have spent maintaining the property.

Trial Court Opinion, 8/6/24, at 3.

The evidence reflects that Appellant had the benefit of possession of the home parcel and farm parcel throughout the lease periods. Further, Appellant agreed to pay his claimed expenses as part of the oral lease. **See** N.T., 5/0/24, at 77. Our review confirms the trial court's findings are supported in the record and its legal conclusion is sound. **See Gamesa Energy USA**, 181 A.3d at 1191. Appellant's fifth issue merits no relief.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/21/2025